IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

MICHAEL J. LINDELL and
MYPILLOW, INC.,

        Plaintiffs,

v.

UNITED STATES OF AMERICA,
MERRICK GARLAND in his official
capacity as Attorney General of the United States,
the United States Attorney for the District of
Minnesota, and CHRISTOPHER WRAY
in his official capacity as Director of the Federal
Bureau of Investigation,

        Defendants.
_____

Case No. 0:22-cv-2290

**COMPLAINT FOR RETURN
OF PROPERTY AND FOR
DECLARATORY AND
EQUITABLE RELIEF**

Jury Trial Demanded

# INTRODUCTION

1. This action requests an Order (1) declaring that the actions of agents of the United States in applying for and executing a search and seizure warrant ("the Warrant") on Plaintiff Michael J. Lindell ("Mr. Lindell") on September 13, 2022, violated his rights protected by the First, Fourth, Fifth, and Sixth Amendments to the Constitution of the United States, (2) requiring the return of his cellular telephone and any data accessed from the cellular service provider, (3) enjoining Defendants from accessing any data collected on Plaintiffs' cellular telephone, and (4) prohibiting the release of any information by Defendants that they may have accessed after executing the Warrant.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the complaint seeks vindication for the violation of Plaintiffs' rights guaranteed by the United States Constitution.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of Plaintiff's causes of action arose in this District.

## PARTIES

4. Plaintiff Michael J. Lindell is a citizen of the United States, a resident of the State of Minnesota, and the chief executive officer of MyPillow, Inc. ("MyPillow") and other companies.

5. Plaintiff MyPillow, Inc. is a Minnesota corporation that owns the cell phone which is the subject of the Warrant and is the subscriber to the cellular services provided by Verizon Communications, Inc.

6. Defendant United States of America is the government established at the national level by the United States Constitution and is responsible for the actions of its agents and employees who violate the rights guaranteed to all persons by the Constitution.

7. Defendant Merrick Garland as Attorney General of the United States is responsible for the actions of the agents and employees of the United States Department of Justice ("the Department"). He is sued in his official capacity.

8. Defendant the United States Attorney for the District of Minnesota is responsible for the actions of agents and employees of the Department of Justice within that district. He is sued in his official capacity.

9. Defendant Christopher Wray as Director of the Federal Bureau of Investigation ("FBI") is responsible for the actions of the agents and employees of the FBI. He is sued in his official capacity.

10. The Complaint refers to the United States and its agents and employees, including Defendants Garland, Wray, and the United States Attorney for the District of Minnesota, as "the Government."

## FACTUAL BACKGROUND

11. The Warrant was issued by Magistrate Judge Tony N. Leung on September 7, 2022, authorizing federal agents to seize Plaintiffs' cell phone (an Apple iPhone) and to gain access to multiple categories of data collected on that cell phone. A copy of the Warrant is attached to this Motion and marked Exhibit A, which was served on Mr. Lindell on September 13, 2022, as described below.

12. On the morning of Tuesday, September 13, 2022, at 4:00 a.m., Mr. Lindell drove from his home in Minnesota with a close friend to go duck hunting in Iowa.

13. After finishing their trip that same morning, Mr. Lindell began driving back home with his friend.

14. In the late morning, Mr. Lindell pulled his truck into the drive-through window at a Hardee's restaurant in Mankato, Minnesota.[1]

15. Mr. Lindell did not at any time prior to being detained inform Defendants where he was going, that he was hunting, the route he would drive back from hunting, or the fact that he made an impromptu stop at the fast food restaurant. Upon information and belief, Defendants would have had no idea of Mr. Lindell's whereabouts. Upon information and belief, Defendants used cell site location information or a tracking device to locate and track Mr. Lindell without first securing a warrant for that purpose.

16. As Mr. Lindell was going to drive away from the drive-through window, an unmarked vehicle operated by a federal agent in street clothes abruptly moved in front of Mr. Lindell's truck quickly blocking any forward movement.

17. Immediately after the first vehicle operated by a federal agent appeared, a second unmarked vehicle pulled to the right of Mr. Lindell's truck and prevented him from driving around the first vehicle that was blocking his way.

18. At about the same time, a third unmarked vehicle operated by a federal agent in street clothes pulled in directly behind Mr. Lindell's truck, making it impossible for him to back up in the drive-through lane.

19. Not knowing that the individuals in the three vehicles were federal agents, and fearing for his and his friend's lives, Mr. Lindell was prepared to ram one of the

---

[1] While the manager of a Hardee's in Mankato has apparently claimed the FBI did not execute a warrant at his restaurant, the FBI has confirmed that it served a warrant at that time at that location.

vehicles to escape. Before taking any such action he demanded, in a loud voice to attract attention, to know "Who are you people? What do you want?"

20. One of the individuals who exited that vehicle told Mr. Lindell that the people who surrounded him were the FBI. When Mr. Lindell asked that the agents show him identification, three of the four did so.

21. In what appears to be an effort to elicit allegedly incriminating evidence from Mr. Lindell, the federal agents then began questioning him about a variety of topics relating to Dominion Voting Systems, Tina Peters, Colorado incidents, Doug Frank, information posted on Plaintiff's media platform, FrankSpeech.com, Dominion's Trusted Build software update that destroyed election records, his travel on his airplane throughout the Country and to Colorado, and other matters. These questions lasted approximately 25-30 minutes.

22. Throughout the events described above, the federal agents deprived Mr. Lindell of his freedom of movement since he was not free to leave the drive-through lane. They did not inform him that there was a warrant to seize his cell phone until after they questioned him for 25-30 minutes. At no point did they read Mr. Lindell his *Miranda* rights or advise him that he had a right to have a lawyer present while being questioned.

23. The federal agents had no authority to detain and question Mr. Lindell against his will.

24. After the questioning described above ended, the FBI agent who appeared to be in charge told Mr. Lindell they had a warrant to seize his cell phone and demanded

that he surrender the phone. At first, Mr. Lindell refused to hand over his cell phone saying that he operated five businesses from this cell phone.

25. Mr. Lindell asked if he could call his lawyer. For an extended period of time, the FBI agents refused this request, stating that he was not allowed to call his attorney.

26. After Plaintiff persisted that he needed to discuss the situation with his lawyer, the agent who appeared to be in charge relented.

27. After Mr. Lindell concluded his conversation with his lawyer, he handed his cell phone to the agent under protest. Mr. Lindell requested that he be allowed to back up the data on his cell phone on a cloud service. The lead agent refused that request, but he advised Mr. Lindell after checking that the most recent backup occurred on September 8, 2022.

28. The agents detained Mr. Lindell for approximately 40-45 minutes on September 13, 2022, and allowed him to leave only after he handed over his cell phone to the agents.

29. The cell phone in question is owned by MyPillow, which assigned that cell phone number to Mr. Lindell.

30. MyPillow subscribes to the cellular telephone services of Verizon Communications, Inc. ("Verizon").

31. Mr. Lindell uses the cell phone assigned to him as his exclusive method, other than face-to-face communications, of operating MyPillow and four affiliated businesses. The cell phone is integrated into the computer systems of his companies,

making the data stored on those systems accessible through the cell phone. Mr. Lindell has no ready access without his cell phone to passwords that are necessary for his access to essential computer programs, and financial transactions through the company banks. The cell phone is also programmed to operate Mr. Lindell's hearing aids.

32. Data collected on Plaintiffs' cell phone include attorney-client information and other information protected by the First Amendment's freedom of association from disclosure to the Government.

33. Plaintiffs were never asked by Defendants for the subject cell phone or any data on the cell phone at any time prior to the FBI surrounding Mr. Lindell and seizing the phone. Defendants had a subpoena prepared, and finalized on September 7, 2022, the same date they obtained the Warrant from the Federal District Court Magistrate Judge. Between September 7 and September 13, Plaintiffs were never served with the subpoena (until execution of the Warrant). That is, Plaintiffs were never served with a subpoena by Defendants for the subject cell phone or any data on the cell phone at any time prior to the FBI surrounding Mr. Lindell and seizing the phone. Plaintiffs do not know whether the affidavit used to obtain the Warrant contained any information about the September 7 subpoena or whether the subject cell phone and related data could simply be obtained by subpoena. Upon information and belief, Defendants took no action whatsoever to obtain the subject cell phone using less intrusive and less intimidating and coercive means than as described in this complaint. The FBI has no information, nor does any information exist, to show that Mr. Lindell presented a risk of destroying, evading, or refusing to produce the information sought by the Warrant.

34. Plaintiffs are not aware of any efforts by the Government prior to the Warrant being served to communicate with Verizon or Apple for the purpose of accessing the data collected on Plaintiffs' cell phone, but Plaintiffs do not possess such data.

35. Plaintiffs have not given consent to Verizon or Apple to provide the Government access to data on Plaintiff's cell phone.

36. The Department's asserted need for the data collected on Plaintiffs' cell phone is to obtain evidence of potential violations of 18 U.S.C. § 1028(a)(7) (identity theft), 18 U.S.C. §1030(a)(5)(A) (intentional damage to a protected computer), and 18 U.S.C. § 371 (conspiracy to violate the preceding statutes).

37. Upon information and belief, those alleged violations arise out of circumstances in Mesa County, Colorado where a duly elected Elections Clerk, Tina Peters, ordered forensic images of the Dominion Voting Systems, Inc. ("Dominion") election management system ("EMS") server prior to and after Dominion installed a Trusted Build software update on the EMS. Credentialed cyber experts concluded in published reports that they had analyzed the Mesa County EMS and found, *inter alia*, violations of state and federal record retention laws—and ballot record manipulation—in the elections held in Mesa County in November 2020 and April 2021; that the Mesa County EMS server had unauthorized software installed by Dominion, Microsoft SQL Server Management Studio 17, that allows calculated vote totals to be easily changed; that log files in the EMS showed the unauthorized creation of a second set of ballot databases and the manipulation of ballot record data; and that Dominion's Trusted Build

state-wide software update performed in May 2021, as ordered by the Colorado Secretary of State, overwrote the entire EMS operating system, and thereby violated state and federal election record retention laws.[2] This software update destroyed, *inter alia*, the computer system log files showing the auditable election record of activity in the EMS. Upon information and belief, had Clerk Peters not ordered a forensic image be taken of the EMS prior to this software update, the above-mentioned violations would not have been discovered.

38. The Warrant was obtained by the Government in bad faith. Those who were involved in applying for and serving the Warrant were aware that Mr. Lindell depended on his cell phone as his exclusive method of operating his businesses as he has publicly stated on many occasions that he does not have a computer and uses only his cell phone to conduct all aspects of his business. They were, or should have been, aware that Mr. Lindell uses his cell phone to communicate with his lawyer.

39. In applying for the issuance of the Warrant, the Department failed to apprise Magistrate Judge Leung of Mr. Lindell's role in attempting to uncover violations of federal and Colorado election record retention statutes and the fact that he

---

[2] *See, e.g.,* United States Department of Justice press release dated July 28, 2021, summarizing federal election record retention requirements codified in the Civil Rights Act of 1960 at 52 U.S.C. §§ 20701-20706, and stating "[j]urisdictions must therefore also retain and preserve [election] records created in digital or electronic form." *https://www.justice.gov/opa/press-release/file/1417796/download.*

communicated with his lawyers about these matters. It also failed to appraise the Magistrate Judge of the subpoena it intended to serve on Plaintiffs.

40. The good faith efforts of Mr. Lindell and those associated with him to advocate that the Government determine whether election laws were violated are protected by the First Amendment.

## COUNT I
### Violation of the First Amendment

41. The Warrant violates Mr. Lindell's freedom of association, freedom of speech, freedom of the press, and his right to petition the government for the redress of grievances, all of which are guaranteed by the First Amendment.

42. The Warrant authorizes a review of all electronically stored information on Plaintiffs' cell phone, which encompasses several years of data that includes communications with individuals who have no connection to any possible violation of the criminal statutes that are the justification for the Warrant.

43. Mr. Lindell has communicated with many Americans in his efforts to inform the public about alleged election fraud and alleged irregularities he believes occurred in order to bring an end to the dependence on computerized voting and tabulating machines in elections.

44. Many of the Americans who have associated with Mr. Lindell in his efforts insist on remaining anonymous out of their reasonable fear of being subjected to harassment, intimidation, investigation, and possible prosecution for their participation in

protected activities regarding such as discussing alleged election fraud and making election systems transparent and safer from manipulation.

45. Mr. Lindell has established a media platform, FrankSpeech.com, for the publication of news and commentary.

46. Mr. Lindell has produced and released four videos on the subject of alleged election fraud.

47. The Director of National Intelligence issued a report on March 1, 2021, asserting that those who espouse "narratives of fraud in the recent election…will almost certainly spur some [domestic violent extremists] to try to engage in violence…."

48. The Secretary of Homeland Security issued a guidance document in 2021 regarding "domestic extremism" that included "sociopolitical developments such as narratives of fraud in the recent general election."

49. In June 2021, Attorney General Merrick Garland threatened criminal and civil actions against those who pursue audits of voting tabulations if those audits run afoul of federal laws.

50. These official pronouncements were intended to intimidate Americans, including Mr. Lindell and his associates, who are actively involved in supporting audits of elections. They function to chill the exercise of Mr. Lindell's First Amendment freedoms of speech, association, the press, and the right to petition the Government for the redress of grievances.

51. Engaging in activity to promote election integrity is protected by the First Amendment, whether or not the allegations turn out to be true.

52. The Warrant is simply another technique employed by Defendants to deter Plaintiff and those who act in concert with him from exercising their constitutional rights guaranteed by the First Amendment.

53. The freedom of association protects the choice of American citizens to remain anonymous when they participate in activities with others to promote their shared beliefs about matters of public concern.

54. The Warrant and the actions of United States officials described above also have an impermissible chilling effect on Mr. Lindell's exercise of his freedom of speech, his freedom of the press, and his right to associate with others and to petition the government for the redress of grievances.

**COUNT II**
**Violation of the Fourth Amendment**
**Use of cell site location information without a warrant**

55. The issuance of the Warrant violated the warrant provision of the Fourth Amendment, which requires that a warrant first be issued to justify the surveillance of Mr. Lindell either by using cell site location information ("CSLI") or a tracking device attached to his vehicle.

56. In all likelihood, the Government employed either CSLI or a tracking device attached to Mr. Lindell's vehicle to monitor his whereabouts. The Government should be required to disclose this to the Court and Mr. Lindell.

57. The Government to Plaintiffs' knowledge did not obtain a warrant prior to its surveillance of Mr. Lindell.

58. The surveillance of Plaintiff by the Government violated the Fourth Amendment.

**COUNT III**
**Violation of the Fourth Amendment**
**Unreasonable Search and Seizure**

59. The Warrant violates Mr. Lindell's right to be protected against an unreasonable search and seizure by the Fourth Amendment.

60. The sweeping nature of the Warrant entails the production and disclosure not only of Mr. Lindell's private and privileged information but also the private, privileged information of many others who have associated with him to advance their beliefs about election fraud and the need for election integrity. This seizure is analogous to seizing all contents of a person's entire home and office.

61. Included in the data collected on Plaintiffs' cell phone are Mr. Lindell's communications with numerous attorneys over a period of years. Those communications are protected by the attorney-client privilege.

62. The Warrant constitutes a general warrant within the meaning of that term as used by the Framers of the Fourth Amendment because it allows the Government to rummage through an immense amount of data collected over a period of years, much of which data has no relationship to the avowed justification for the issuance of the Warrant.

63. The Warrant does not state any procedure or means by which the Government will minimize its intrusion into Plaintiff's personal information and limit its review of the data on the cell phone to information stated in the Warrant. Because it fails

to limit or define the process by which the Government can review the data on the cell phone, the Warrant is an unconstitutional general warrant.

64. According to Justice Department policy, issuance of a subpoena, not a search and seizure warrant, is the appropriate method of obtaining documents, data and other property from a person who has not been charged with a crime or made the target of an investigation. The subpoena method requires the Department to specify the information that is sought without the need for the Department's access to other nonresponsive or nonprivileged information in the possession of the person served. It also allows the person served to have access to a court to challenge the subpoena before it is enforced. The Warrant does not indicate that there is evidence that Mr. Lindell intended to destroy his cell phone, and Plaintiffs have not had access to the Affidavit.

65. Mr. Lindell was served with a grand jury subpoena dated September 7, 2022, the same date on the Warrant. The subpoena seeks information about the same matters covered by the Warrant. The Warrant was unnecessary in light of the subpoena.

66. The issuance of a search and seizure warrant is judged by a heightened standard when it involves information that is arguably subject to the protection of the First, Fifth, and Sixth Amendments, which apply in this case.

## COUNT IV
### Violation of the Fourth Amendment
### Unlawful seizure of Plaintiff

67. The Fourth Amendment prohibits the detention of an individual, even for a brief period, without a warrant or probable cause to arrest.

68. The agents who operated the three vehicles in a manner that blocked Mr. Lindell from leaving the fast-food restaurant's drive-through lane on September 13, 2022, intended to, and did in fact, restrain Mr. Lindell's freedom to exit.

69. Mr. Lindell submitted against his will to the show of force by the agents and made no attempt to escape their blockade.

70. The agents were not executing a warrant that authorized them to seize Mr. Lindell because none had been requested or obtained for that action.

71. While he was in their custody, the agents asked Mr. Lindell targeted questions with a purpose to elicit incriminating information. At no point did they read Mr. Lindell his *Miranda* rights.

72. During Mr. Lindell's detention, the agents initially refused his request to telephone his lawyer while demanding that he surrender his cell phone to the agents.

73. After a telephone conversation with his lawyer, Mr. Lindell handed his cell phone to the agents.

74. The actions of the agents in detaining Mr. Lindell were unnecessary and unreasonable and an effort to surreptitiously obtain incriminating information under the guise of seizing a cell phone.

75. Mr. Lindell's detention by the agents on September 13, 2022, in order to question him while delaying execution of the warrant, constituted a seizure for purposes of the Fourth Amendment and improper questioning under the Fifth Amendment. The refusal to allow him to call his lawyer, even if only brief, also denied him his Sixth Amendment rights.

76. The seizure of Mr. Lindell by the agents was in violation of the Fourth Amendment.

## COUNT V
## Violation of the Fifth Amendment's Due Process Clause

77. The Due Process Clause of the Fifth Amendment protects against arbitrary conduct of the Government.

78. The totality of the circumstances of the Government's application for, and execution of, the Warrant violates the Due Process Clause. Plaintiffs incorporate here the allegations contained in ¶¶ 11-58, *supra*.

79. The Government acted in bad faith in intentionally withholding material information from Magistrate Judge Leung when it applied for the Warrant because its agents failed to apprise the Magistrate Judge who issued the Warrant of material information.

80. A warrant was issued in addition to the subpoena served on Mr. Lindell to allow the Government to obtain access to an immense body of data that it anticipated using for improper purposes as opposed to legitimate law enforcement purposes.

81. The Government executed the Warrant in a manner that was abusive and without proper regard for: (1) Mr. Lindell's right to consult his attorney when confronted with the Warrant to seize his phone, (2) Mr. Lindell's appropriate request to preserve the data on his cell phone that was critical to his performance as chief executive officer of five companies, (3) the likely damage to the interests of those persons whose private and proprietary information would be involved in the Government's access to the data

collected on Plaintiffs' cell phone, (4) the unlawful detention of Mr. Lindell and the individual traveling with him, (5) the adverse effect on the businesses dependent on Mr. Lindell's ability to use his cell phone, (6) the impropriety of questioning Mr. Lindell while being detained about asserted violations of law and without advising him that he could consult his lawyer and have his attorney present, and (7) the unnecessary and unreasonable resort to a search and seizure warrant when a subpoena for that purpose is the usual and appropriate method and was in fact served on Mr. Lindell.

WHEREFORE, Plaintiffs request that the Court enter an Order:

(a) Declaring that the actions of Defendants violated Mr. Lindell's rights guaranteed by the First Amendment,

(b) Declaring that the Defendants' actions violated Mr. Lindell's rights guaranteed by the Fourth Amendment,

(c) Declaring that the Defendants' actions violated Plaintiffs' rights guaranteed by the Fifth Amendment,

(d) Declaring that the Warrant is invalid,

(e) Requiring under Rule 41(g) of the Federal Rules of Criminal Procedure that the Defendants return the cell phone to Plaintiffs that it seized from them on September 13, 2022, and any data the Defendants may have accessed,

(f) Granting a temporary restraining order prohibiting the Defendants from attempting any access to the data collected on Plaintiffs' cell phone,

(g) Requiring Defendants to immediately provide Plaintiffs with a copy of the Affidavit submitted to the Court to obtain the Warrant,

(h) Granting Plaintiffs the right to recover their attorneys' fees, costs, and expenses pursuant to 28 U.S.C. § 2412, and

(i) Such further relief as the Court may deem just and proper.

## VERIFICATION

I, Michael J. Lindell, declare as follows:

1. I am the Chief Executive Officer of My Pillow, Inc.

2. I have personal knowledge of the matters stated in the foregoing Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

Executed on September 20, 2022.

Michael J. Lindell

State of MN
County of CARVER

Subscribed and sworn before me this 20th day of September 2022 by Michael J Lindell.

Notary Public

TRACI RAE ELIZABETH SCHREMPP
Notary Public
Minnesota
My Commission Expires
Jan 31, 2026

My commission expires: 01-31-2026

Dated: September 20, 20222          **PARKER DANIELS KIBORT LLC**

  By */s/ Andrew D. Parker*
    Andrew D. Parker (MN Bar No. 195042)
    888 Colwell Building
    123 N. Third Street
    Minneapolis, MN 55401
    Telephone: (612) 355-4100
    Facsimile: (612) 355-4101
    parker@parkerdk.com

*Counsel for Michael J. Lindell and My Pillow, Inc.*

**OLSEN LAW, P.C.**

By */s/ Kurt Olsen*
    Kurt Olsen (D.C. Bar No. 445279)*
    1250 Connecticut Ave., NW, Suite 700
    Washington, DC 20036
    Telephone: (202) 408-7025
    ko@olsenlawpc.com

**to be admitted pro hac vice*

*Counsel for Michael J. Lindell*

**MCSWEENEY, CYNKAR & KACHOUROFF, PLLC**

By */s/ Patrick M. McSweeney*
    Patrick M. McSweeney*
    3358 John Tree Hill Road
    Powhatan, VA 23139
    Telephone: (804) 937-0895
    patrick@mck-lawyers.com

* *To be admitted Pro Hac Vice*

*Counsel for Michael J. Lindell*

**ALAN DERSHOWITZ, ESQ.**
Alan Dershowitz (MA Bar No. 121200)*
1575 Massachusetts Avenue
Cambridge, MA 02138

*\* To be admitted Pro Hac Vice*

*Of Counsel for Plaintiff Michael J. Lindell*