IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL J. LINDELL and MYPILLOW, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, MERRICK GARLAND in his official capacity as Attorney General of the United States, the United States Attorney for the District of Minnesota, and CHRISTOPHER WRAY in his official capacity as Director of the Federal Bureau of Investigation,<br><br>    Defendants. | Case No. 22-cv-02290-ECT-ECW<br><br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR RETURN OF PROPERTY PURSUANT TO FED. R. CRIM. P. 41(g)** |

   Plaintiffs Michael J. Lindell and MyPillow, Inc., have filed a Complaint for Return of Property and for Declaratory and Equitable Relief and a Motion for Temporary Restraining Order and for Return of Property Pursuant to Fed. R. Crim. P. 41(g). The Motion requests the return of property illegally seized from Plaintiffs by the Government. Plaintiffs submit this memorandum in support of their Motion.

   Plaintiffs further request that the Court preserve the status quo by immediately ordering that Defendants refrain from accessing or taking any action with respect to the seized cell phone at least until a hearing is held in this matter, at which time the Court can determine whether or not to extend maintenance of the status quo. To the extent that the Government is allowed free rein as it relates to Plaintiffs' cell phone and information,

1

including privileged and confidential information, the damage to Plaintiffs' rights will be irremediable, whereas a delay of a few days or even weeks in the Government's review will have little or no adverse impacts.

Plaintiffs request that a Status Quo Order be issued upon receipt of this Motion.

**BACKGROUND**

There is a compelling need for this Court to enter an emergency Order that will prohibit the Defendants in this action ("the Government") from acting upon the illegal seizure of Mr. Lindell's cell phone on September 13, 2022. The seizure and the actions associated with the securing and execution of a search and seizure warrant ("the Warrant") by the Government violate Plaintiff's rights protected by the First, Fourth, Fifth, and Sixth Amendments to the Constitution. Mr. Lindell's efforts to expose and raise public awareness of election fraud, and the inherent dangers posed to our elections, and our Republic, by the use of black box computerized voting machines is well-known to the Government. The object of the search and seizure warrant for Mr. Lindell's cell phone was not only to gain access to an immense amount of data collected on that cell phone, including attorney-client communications and communications with other individuals which are protected by the First Amendment, but also to send a message to others not to speak out on these issues.

The Warrant prescribes no method by which the privileged and constitutionally protected communications, including communications wholly unrelated to the Government's investigation out of which the Warrant arises, would be safeguarded and kept beyond review by the Government. It explicitly authorizes review of all

electronically stored data that has been seized "by any government personnel assisting in the investigation." The seizure of Mr. Lindell's cell phone has also had severe adverse effects on My Pillow, Inc., his other businesses, and his personal health. Plaintiffs request emergency relief to secure the return of the cell phone and a prohibition on any access by the Government to data collected on the cell phone.

The Warrant was issued on September 7, 2022, authorizing federal agents to seize Mr. Lindell's cell phone and to gain access to multiple categories of data collected on that device. A copy of the Warrant is attached to this Memorandum and marked Exhibit 1. On September 13, 2022, federal agents served the Warrant on Mr. Lindell in the drive-through lane of a fast-food restaurant in Mankato, Minnesota in circumstances that exhibited utter disregard for the constitutional rights of Mr. Lindell. *See* Declaration of Michael J. Lindell (Sept. 21, 2022) (Exhibit 2) ("Lindell Decl."). To prevent further injury to Plaintiffs' rights, Plaintiffs request not only the immediate return of the cell phone but also an Order barring the Government from attempting to access data stored on it and requiring the return of any data that the Government has already accessed. Plaintiffs request that the Court prohibit the Government from making any use of the data and require the Government to identify what data it has accessed.

The good faith efforts of Mr. Lindell and those associated with him to criticize the government or take action to determine whether election laws were violated are protected by the First Amendment. *See Connick v. Myers,* 461 U.S. 138, 161 (1983). *See generally* R. Krotoszynski, *Whistleblowing Speech and the First* Amendment, 93 IND. L. J. 267 (2013). The Court should not permit the Government to frustrate these First Amendment

efforts or to investigate and prosecute those involved to prevent them from pursuing their objective. *Ruscavage v. Zuratt,* 821 F. Supp. 1078, 1083 (E.D. Pa. 1983).

## ARGUMENT

### I. THE RETURN OF PROPERTY IS REQUIRED

Plaintiffs are entitled to a return of any property, including data, seized by the Government on September 13, 2022, pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure. Whether or not the Warrant should be invalidated in its entirety, the scope of the Warrant that encompassed the seizure of attorney-client and First Amendment privileged information is impermissible. Rule 41(g) requires that the data sought be returned until they are properly segregated to protect the privileged and constitutionally protected communications from disclosure.[1]

### II. THE COURT SHOULD GRANT A TEMPORARY RESTRAINING ORDER

Plaintiffs request that the Court exercise its equitable power to enjoin Defendants from reviewing or making any use of data from the cell phone until the issues raised in Plaintiffs' challenge to the legitimacy of the Warrant are resolved. A preliminary injunction requires a balancing of competing interests under the four-factor standard established by *Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008). An applicant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

---

[1] The Government did nothing when seeking the Warrant to commit to a process for segregating and preventing disclosure of protected information. Such processes could have and should have easily been implemented here.

tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Each factor is discussed below.

### A. Plaintiff is likely to succeed on the merits.

The likelihood-of-success-on-the-merits factor is an "independent, free-standing requirement" for a preliminary injunction. *Shereley v. Sebelius,* 644 F.3d 388, 393 (D.C. Cir. 2011). However, Plaintiffs need not establish absolute certainty of success on the merits. *Booth v. Bowser,* 2022 WL 823068, *16 (D.D.C. March 18, 2022) (citing *Population Inst. v. McPherson,* 797 F.2d 1062, 1078 (D.C. Cir. 1986)). "[I]t will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." It is not necessary for Plaintiffs to show a 51% likelihood of success. *Davis v. Pension Benefit Guar. Corp.,* 571 F.3d 1288, 1292 (D.C. Cir. 2009); *Tully v. Okeson,* 977 F.3d 608, 613 (7th Cir. 2020); *S. S. Body Armor I, Inc. v. Carter, Ledyard & Milburn LLP,* 927 F.3d 763, 772 (3d Cir. 2019). It is sufficient for Plaintiffs to present a *prima facie* case on the merits. C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE & PROCEDURE § 2948.3 (2013). This first factor is considered the most important factor. *Aamer v. Obama,* 742 F.3d 1023, 1038 (D.C. Cir. 2014).

The Complaint contains six counts. Count I asserts that the Warrant violates Mr. Lindell's freedom of association, freedom of speech, freedom of the press, and his right to petition the Government for the redress of grievances guaranteed by the First Amendment.

The law is well-settled that the First Amendment protects against the compelled disclosure of information concerning the identities and communications of individuals who associate for the advancement of shared beliefs and who choose to do so anonymously. *E.g., NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460 (1958) (citing previous holdings). In a recent Supreme Court decision, those holdings were reinforced. *American for Prosperity Found. v. Bonta,* 141 S. Ct. 2373, 2388 (2021) ("Our cases have said that disclosure requirements can chill association…."). The associates of Mr. Lindell who wish to remain anonymous have a reasonable fear of retaliation and harassment by the Government because of threats made recently by the Director of National Intelligence, the Secretary of Homeland Security, and Defendant Merrick Garland to investigate and prosecute those who claim that there was fraud in the 2020 presidential election.

Count II asserts that the Government violated Mr. Lindell's Fourth Amendment right not to be monitored and tracked by the Government using cell site location information ("CSLI") or a tracking device without a warrant. Mr. Lindell's movements on the day the Warrant was executed were spontaneous and not communicated to any person in advance. On information and belief, Mr. Lindell was being tracked by the use of CSLI or a tracking device on September 13, 2022, allowing the Government to find him notwithstanding the spontaneous nature of his movements. The Government has not shown Mr. Lindell any warrant to track him using either method.

Count III asserts that the Warrant violates Mr. Lindell's Fourth Amendment right that the things to be seized would be described with particularity. The Warrant, however,

authorized the seizure of all electronically collected data on Plaintiffs' cellphone, which encompasses a massive amount of data collected over several years that is unrelated to the three statutes identified in the Warrant.

Count IV asserts that Mr. Lindell was seized in violation of the Fourth Amendment. Any temporary and unreasonable detention of Mr. Lindell without a warrant violates the Fourth Amendment. *Torres v. Madrid*, 141 S. Ct. 989, 1003 (2021). There were no circumstances in this situation that justified a seizure without a warrant.

Count V asserts that Mr. Lindell was subjected to conduct on the part of the Government's agents on September 13, 2022, that violated the Due Process Clause of the Fifth Amendment. The totality of the circumstances of Mr. Lindell's seizure, the application for the Warrant which involved bad faith of the agents, and their questioning of him while detained without advising him of his right to have a lawyer present (and in fact preventing him for some time from calling his lawyer) constituted a denial of due process to Mr. Lindell. Furthermore, the Government should not have obtained the Warrant at all. It served Mr. Lindell with a subpoena at the same time it executed the Warrant. Lindell Decl. ¶ 10. The Government did not serve the subpoena prior to the time it served the Warrant and the subpoena together. The Government, in fact, took no action to obtain Mr. Lindell's cell phone until it executed the Warrant. It did not even ask Mr. Lindell for his cell phone. It went from no action whatsoever to a surprise execution of a warrant. The Government easily could have, and should have, obtained the records it sought from Mr. Lindell by subpoena rather than by seizing his cell phone.

Plaintiffs are likely to succeed on the merits of each count for the following reasons.

### 1. The Warrant Violates the First Amendment

The chilling effect on Mr. Lindell's exercise of his First Amendment rights, namely, the freedom of speech and political expression, the freedom of association, the freedom of the press, and the right to petition the government for the redress of grievances, would be immediate and severe. *See Bonta,* 141 S. Ct. at 2382-83 ("Broad and sweeping inquiries into these protected areas discourage citizens from exercising rights protected by the Constitution."). These likely consequences are described in Mr. Lindell's Declaration. Enforcement of the Warrant would inhibit and deter Mr. Lindell and his associates from continuing their public-interest First Amendment activity. *See Nat'l Treasury Emps. Union v. United States,* 101 F.3d 1423, 1430 (D.C. Cir. 1996).

### 2. The Warrant Violates the Fourth Amendment

The warrant's scope is so expansive that it violates the Fourth Amendment. Mr. Lindell conducts every single aspect of his business and personal life with the phone that the FBI seized. *See* Lindell Decl. ¶ 14. The warrant would sweep into the Government's possession communications by and to Mr. Lindell that are entirely unrelated to the asserted bases for the warrant, which relate to alleged violations of 18 U.S.C. §§ 1028(a)(7), 1030(a)(5)(A), and 371. It would disclose to the Government information that is personal to Mr. Lindell and individuals who have communicated with Mr. Lindell and utterly unrelated to the asserted purpose of the warrant. Under the circumstances, the

warrant constitutes the type of general warrant that was a principal prompting for the adoption of the Fourth Amendment.

As observed in the district court in *In re Search of Apple IPhone*, 31 F. Supp. 3d 159 (D.D.C. 2014):

> In the physical world, a search of an entire file cabinet or building for a particular document is constitutionally permissible only because there is no way to know with any certainty ahead of time how the search location can be narrowed so that only the specific folder containing the document will be searched. . . . In such instances, the textual admonitions of the Fourth Amendment must give way to the practical reality of how the search must be conducted.
>
> * * *
>
> The digital world however, is entirely different. For example, sophisticated search tools exist, and those search tools allow the government to find specific data without having to examine every file on a hard drive or flash drive. When searching electronic devices to seize the data, the potential for abuse has never been greater: it is easy to copy them and store thousands or millions of documents with relative ease. But, by using search tools, there is also the potential for narrowing searches so that they are more likely to find only the material within the scope of the warrant.

*Id*. at 167 (citations omitted). In that case, the district court quoted *United States v. Schesso*, 730 F.3d 1040, 1042 (9th Cir. 2013) (citing *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc) (per curiam)) stating that "'the reality that over-seizing is an inherent part of the electronic search process' requires this Court to 'exercise greater vigilance' in protecting against the danger that the process of identifying seizable electronic evidence could become a vehicle for the government to gain access to a larger pool of data that it has no probable cause to collect.'" *Id*. at 168. The district court noted that the government had not "explain[ed]

how it is going to conduct this search to minimize the risk that files outside the scope of the warrant will be discovered" and rejected the application for a warrant. *Id*.

To overcome these Fourth Amendment protections and mitigate potential abuses allowed by a seizure of a cell phone or similar electronic device, the court required the government to specify how the images of the data on the phone would be taken; the identity of the forensic team that would perform the search and that team's relationship to the investigating officers directly involved in the search; the predetermined search terms provided to the court to avoid viewing material that is not within the scope of the warrant; and when the device would be returned to the owner. *Id*.; *see also In re Search of Odys Loox Plus Tablet*, 28 F. Supp. 3d 40, 43-46 (D.D.C. 2014) (rejecting government's application for a search warrant to seize a cell phone.). The government's warrant to seize Mr. Lindell's cell phone lacked any of these procedural safeguards to ensure Mr. Lindell's rights guaranteed by the Fourth Amendment were not violated.

As the Chief Justice observed in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), the Court has applied to innovations in surveillance tools the principles that are embodied in the Fourth Amendment as the Founding generation crafted it, which was a "response to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Id*. at 2213. The Warrant authorizes the seizure of years of data collected on Plaintiffs' cell phone and review by the Government of all this massive collection of data. The Warrant, then, effectively constitutes a general warrant that is

proscribed by the Fourth Amendment. *See Riley v. California*, 573 U.S. 373, 403 (2014). Because of the Warrant's overbreadth, it is invalid.

In addition, the fact that Mr. Lindell's cell phone contains First Amendment-protected communications supports the conclusion that execution of the Warrant violated Mr. Lindell's Fourth Amendment rights. The Supreme Court has held, "the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain." *Stanford v. State of Tex.*, 379 U.S. 476, 485 (1965). The same principle must apply with no less force here, where the things to be seized are electronic records of speech and communication—text messages, call histories, email communications, and other contents of Mr. Lindell's phone—and where those records are targeted for seizure because the Government believes they may contain speech about efforts to uncover election fraud. The particularity requirement must therefore be applied with the "most scrupulous exactitude" to prevent the Government from chilling speech: "leaving the protection of [First Amendment] freedoms to the whim of the officers charged with executing the warrant" is a "constitutional impossibility." *Id.* The Warrant's failure to describe the materials to be seized with any particularity whatsoever clearly fails to meet this heightened standard. For this reason, Mr. Lindell is likely to succeed on the merits of his Fourth Amendment claim.

### 3. The Government Likely Withheld Material Information From the Court in Applying for the Warrant

The Government's asserted need for the data collected on Plaintiffs' cell phone is to obtain evidence of potential violations of 18 U.S.C. § 1028(a)(7) (identity theft), 18 U.S.C. §1030(a)(5)(A) (intentional damage to a protected computer), and 18 U.S.C. § 371 (conspiracy to violate the preceding statutes). Plaintiffs do not have access to the affidavit used to obtain the Warrant. Based on their knowledge of the relevant facts, Plaintiffs expect that the Government withheld or misstated material information when obtaining the Warrant. *See Z. J. by and through Jones v. Kansas City Bd. of Police Commrs.,* 931 F.3d 672, 686 (8th Cir. 2019). For example, credentialed cyber experts reviewed forensic images of Mesa County, Colorado election system computers and issued reports made public, and known to the Government, two of which are particularly relevant here.[2] See Verified Complaint ¶ 37. Plaintiffs believe the Government did not provide this information to the Magistrate Judge though the information is necessary to evaluate the Government's investigation of these matters and its purported need to seize Mr. Lindell's phone by Warrant.

Plaintiffs have a right to review the Warrant to show the Court whether in applying for the issuance of the Warrant, the Government failed to apprise Magistrate Judge Leung of material information that would have caused the application to be denied. *See United States v. Randle*, 39 F.4th 533, 537-38 (8th Cir. 2022); *Hartman v. Bowles*, 39

---

[2] Two cyber expert reports are attached as Exhibits 3 and 4. Appendices available upon request.

F.4th 544, 546 (8th Cir. 2022). There were several other matters that should have been presented in the Warrant application: (1) the lack of statutory justification for asserting potential violations of 18 U.S.C. §§ 1028(a)(7) and 1030(a)(5)(A) of which the Government was aware because each required an element of lack of authorization for the actions attributed to those making an image of the Dominion Trusted Build software update (see https://www.thehill.com/policy/technology/139354-lawmakers-slam-doj-prosecution-of-swartz-as-ridiculous-absurd/); (2) Plaintiffs are unaware of any evidence presented to the Magistrate Judge that would negate the conclusion that all actors involved in making an image of the Trusted Build software update were authorized to do so; (3) there was no evidence of damage to any computer as required by 18 U.S.C. § 1030(a)(5); (4) any and all actions by Mr. Lindell in exposing violations of federal and Colorado election statutes related to the installation of Dominion's Trusted Build software update were protected under the First Amendment; and (5) the Department had a conflict of interest in investigating matters related to the 2020 presidential election requiring the appointment of Special Counsel to conduct any investigation he or she deems appropriate. 28 CFR §600.1.

Plaintiffs reserve the right to expand or alter their Motion in response to the contents of the affidavit in support of the Warrant.

Plaintiffs, therefore, have established a substantial likelihood that they would prevail on each of the counts. They need only establish a likelihood of prevailing on any one of the counts.

## B. Plaintiffs would suffer irreparable injury if a temporary restraining order is not granted.

Plaintiffs must show that they will suffer irreparable harm if a temporary restraining order is not granted. *Benisek v. Lamone.* 138 S. Ct. 1942, 1944 (2018). The injury to Plaintiffs in the absence of the requested relief would be immediate and irreparable. *See Roman Catholic Diocese v. Cuomo,* 141 S. Ct. 63, 67 (2020) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Elrod v. Burns,* 427 U.S. 347, 373 (1976) ("[T]he temporary violation of a constitutional right itself is enough to establish irreparable harm.").

The injury need only be "likely." *Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, 297 (D.C. Cir. 2006). Plaintiffs are not required to "wait for the Damocles' sword to actually fall." *Tiktok Inc. v. Trump,* 507 F.Supp.3d 92, 114 (D.D.C. 2021). Mr. Lindell has shown in his verified Complaint and his Declaration that there is more than a "subjective chill" of his First Amendment rights. The violation of his constitutional rights, including his First and Fourth Amendment rights, constitute an immediate and irreparable injury if a preliminary injunction is not granted. *Roman Catholic Diocese of Brooklyn v. Cuomo,* 141 S. Ct. 63, 67 (2020) (nothing more needed than such violation).

The first two *Winter* factors are the most critical. *Nken v. Holder,* 556 U.S. 416, 434 (2009). The strength of Plaintiffs' claims is derived from the unambiguous decisions of the Supreme Court and their application to Plaintiffs' claims. That the injuries to the

Plaintiffs caused by the violation of his constitutional rights are irreparable is likewise established by *Benisek, Roman Catholic Diocese,* and *Elrod*.

## C. The balance of equities tips in favor of Plaintiffs.

The third *Winter* factor—whether the balance of the equities tips in favor of the moving party—is often considered together with the fourth factor: whether an award of a motion for preliminary injunction would serve the public interest, when Government is the opposing party. *Nken,* 556 U.S. at 435. The protection of individual constitutional rights serves the public interest. *See Giovani Carandola, Ltd. v. Bason,* 303 F.3d 507, 521 (4th Cir. 2002); *Wynn v. Vilsack,* 545 F.Supp.3d 1271, 1293-94 (M.D. Fla. 2021) (interest of movant in preserving his constitutional rights superior to the interests of the Government regardless of how well-intended its program and how many beneficiaries of that program would be adversely affected). Indeed, the Seventh Circuit has noted: "In First Amendment cases, the likelihood-of-success factor is usually determinative." *ACLU of Illinois v. Alvarez,* 679 F.3d 588, 589-90 (2018). The Government's interest in immediately obtaining the information that it seeks through the Warrant is outweighed by Plaintiffs' interest in protecting their rights guaranteed by the Constitution. *See Louisiana v. Becerra,* 2022 WL 16571, *15 (W.D. La. Jan. 1, 2022).

## D. The public interest favors a grant of a temporary restraining order.

"If, as a practical matter, a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *AT&T Co. v. Winbach and Conserve, Inc.,* 42 F.3d 1421, 1427

n.8 (3d Cir. 1994). The public interest is always served by assuring that the requirements and prohibitions of the Constitution are faithfully enforced. *See League of Women Voters of the U.S. v. Newby,* 838 F.3d 1, 12 (D.C. Cir. 2016) (" There is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations."); *Giovani Carandola,* 303 F.3d at 521 ("[A] state is 'in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction."); *Louisiana v. Becerra,* 2022 WL 16571, *15 (the public interest is served by maintaining the constitutional structure and the liberty of individuals); *Tate v. Pompeo,* 513 F.Supp.3d 132, 153 (D.D.C. 2021). That interest in protecting the constitutional rights of Plaintiffs in this case overrides the public's interest in enforcing the Warrant. The Government may not act "unlawfully even in pursuit of desirable ends." *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 582, 585-86 (1942). In any event, there is no public interest in enforcement of an unlawful action. *League of Women Voters,* 838 F.3d at 21.

## CONCLUSION

The Court should enter Temporary Restraining Order requiring the return of the cell phone and data seized from Mr. Lindell on September 13, 2022 by the Government and prohibiting the Government from attempting any access to or use of the electronically stored data that has been collected on Plaintiffs' cell phone, until Plaintiffs' claims in this action are resolved on the merits.

Dated: September 21, 2022

**PARKER DANIELS KIBORT LLC**

By */s/ Andrew D. Parker*
   Andrew D. Parker (MN Bar No. 195042)
   888 Colwell Building
   123 N. Third Street
   Minneapolis, MN 55401
   Telephone: (612) 355-4100
   Facsimile: (612) 355-4101
   parker@parkerdk.com

*Counsel for Michael J. Lindell and My Pillow, Inc.*

**OLSEN LAW, P.C.**

By */s/ Kurt Olsen*
   Kurt Olsen (D.C. Bar No. 445279)*
   1250 Connecticut Ave., NW, Suite 700
   Washington, DC 20036
   Telephone: (202) 408-7025
   ko@olsenlawpc.com

**to be admitted pro hac vice*

*Counsel for Michael J. Lindell*


**MCSWEENEY, CYNKAR & KACHOUROFF, PLLC**

By */s/ Patrick M. McSweeney*
   Patrick M. McSweeney*
   3358 John Tree Hill Road
   Powhatan, VA 23139
   Telephone: (804) 937-0895
   patrick@mck-lawyers.com

* *To be admitted Pro Hac Vice*

*Counsel for Michael J. Lindell*

**ALAN DERSHOWITZ, ESQ.**
Alan Dershowitz (MA Bar No. 121200)*
1575 Massachusetts Avenue
Cambridge, MA 02138

*\* To be admitted Pro Hac Vice*

*Of Counsel for Plaintiff Michael J. Lindell*