**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

MICHAEL J. LINDELL, *et al.*,

Plaintiffs,

v.

UNITED STATES OF AMERICA, *et al.*,

Defendants.

Case No. 22-CV-2290 (ECT/ECW)

---

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND FOR RETURN OF PROPERTY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(g)[1]**

The government hereby responds to the motion for a preliminary injunction and for return of property pursuant to Federal Rule of Criminal Procedure 41(g) filed by Plaintiffs Michael J. Lindell and MyPillow Inc. ("Plaintiffs"). Both the motion and the underlying complaint present a number of claims without a clear factual or legal basis. As a threshold matter, Plaintiffs' request for relief under Rule 41(g) falls short because—as this Court has already recognized—they failed in their motion to even discuss the rule or cite any authority supporting their claim. Plaintiffs' request for a preliminary injunction, moreover, constitutes an improper effort to collaterally attack an ongoing criminal investigation.

In any event, Plaintiffs' claims lack merit. The government seized Mr. Lindell's cell

---

[1] Although Plaintiffs' motion was initially styled as a motion for a temporary restraining order, Plaintiffs subsequently requested that it be converted to a motion for a preliminary injunction. Accordingly, Defendants' opposition treats Plaintiffs' motion as one for a preliminary injunction.

phone pursuant to a duly authorized search warrant after a neutral magistrate determined that there was probable cause to believe it would contain evidence of federal criminal violations. Plaintiffs have not established that the search violated any of their constitutional rights.

For the reasons discussed below, this Court should reject Plaintiffs' effort to deploy civil litigation to enjoin the federal government's investigation into potential criminal wrongdoing.

## BACKGROUND

### I.      Factual Background

On September 7, 2022, the government obtained a search warrant from United States Magistrate Judge Tony N. Leung to search the person of Mr. Lindell for his cell phone. *See* ECF No. 1, Complaint ("Compl.") at ¶ 11. The warrant also authorized the seizure of the cell phone as well as records constituting fruits, evidence, or instrumentalities of three enumerated offenses: 18 U.S.C. §§ 1028(a)(7) (identity theft), 1030(a)(5)(A) (intentional damage to a protected computer), and 371 (conspiracy to commit identity theft and/or to cause intentional damage to a protected computer). *Id.* at ¶¶ 22, 36. On September 13, 2022, the warrant was executed on Mr. Lindell in the District of Minnesota. *Id.* at ¶¶ 11-14.

Later that evening, Mr. Lindell gave an interview on his television network, Lindell TV. *See* Declaration of Jonathan E. Jacobson, Exhibit 1, September 13, 2022 Michael Lindell Interview. During the interview, Mr. Lindell described federal law enforcement agents' execution of the search warrant. *See id.* Mr. Lindell explained that the agents had

treated him respectfully and professionally. *See id.* at 14:31-50 ("I wanna say this for the record, they were, they were pretty nice guys. I mean, none of them had an attitude. . . . They were very, very gracious . . . they go, 'We're just doing our job.'"). He added that agents advised him that he was not under arrest. *See id.* at 13:14-13:25 ("I said, you know, you guys, I said, 'Are you gonna arrest me?' . . . They go, 'No, no, we're not gonna arrest you.'"); 15:30-34 ("I'm hoping that they're gonna arrest me and I can go, 'Hey, here's the evidence!'"); 16:00-04 ("If I don't give [the phone] to you, will you arrest me then?").

After the seizure of the phone, the government implemented a filter protocol for Mr. Lindell's cell phone to safeguard attorney-client privileged materials and segregate those materials from review by any member of the investigative team.

## II.   This Litigation

On September 20, 2022, Plaintiffs initiated this civil action, alleging that the warrant and its execution violated the First, Fourth, Fifth, and Sixth Amendments to the United States Constitution.[2] *See generally* Compl. The following day, Plaintiffs moved the Court for a temporary restraining order and an order pursuant to Federal Rule of Criminal Procedure 41(g), requiring that the government "(1) return to Mr. Lindell the cell phone seized from Mr. Lindell on September 13, 2022; (2) cease all attempts to access data stored on the cell phone; and (3) refrain from accessing any information already taken from the

---

[2] Although the Complaint alleges that the government's actions "denied [Mr. Lindell] his Sixth Amendment rights," the Complaint does not contain a specific count premised on that alleged violation. *Compare* Compl. at ¶¶ 1, 66, *with id.* at ¶¶ 41-81.

cell phone." ECF No. 9, Plaintiffs' Motion ("Pl. Mot.") at 1; *see also* ECF No. 10, Plaintiffs' Memorandum ("Pl. Mem.").

On September 22, 2022, the Court denied Plaintiffs' motion "to the extent it seeks an *ex parte* temporary restraining order directing Defendants to refrain from accessing or taking any action with respect to the seized cellphone until a hearing on that aspect of their Motion seeking a preliminary injunction." ECF No. 14, Order on TRO ("TRO Order") at 5. In a subsequent order, the Court set a briefing schedule and a hearing on Plaintiffs' motion. *See* ECF No. 25. During a telephonic status conference on September 30, 2022, Plaintiffs confirmed that their existing motion for a temporary restraining order should be treated as a motion for a preliminary injunction.

## ARGUMENT

The Court should deny Plaintiffs' Rule 41(g) motion because they have failed entirely to address—let alone meet—the Rule 41(g) factors, even after the Court identified the deficiencies in their motion. And the Court should similarly deny Plaintiffs' request for a preliminary injunction because this civil action is little more than an effort to use federal civil litigation to halt (and impermissibly obtain a window into) an active federal criminal investigation, and because Plaintiffs' arguments regarding the government's alleged violations of Mr. Lindell's constitutional rights are meritless.

## I.    The Court Should Deny Plaintiffs' Rule 41(g) Motion

Plaintiffs' motion purports to seek the return of Mr. Lindell's cell phone pursuant to Federal Rule of Criminal Procedure 41(g), which allows a person whose property has been seized by the government to petition the district court for its return. *Jackson v. United*

4

*States*, 526 F.3d 394, 396 (8th Cir. 2008). When a plaintiff seeks the return of seized property prior to the filing of criminal charges, such a motion "is more properly considered a suit in equity rather than one under the Rules of Criminal Procedure," and "[f]ederal courts have recognized an independent cause of action for return of property based on the general equitable jurisdiction of the federal courts." *Black Hills Inst. of Geological Rsch. v. U.S. Dep't of Just.*, 967 F.2d 1237, 1239 (8th Cir. 1992). But the Eighth Circuit has emphasized that "[t]his remedy should be exercised cautiously and subject to general equitable principles." *Id.*; Fed. R. Crim. P. 41, Advisory Committee's Notes (1989 amend.) ("If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable."). That is because "[t]hese remedies are extraordinary, and they must be used with restraint." *Matter of Search of 4801 Fyler Ave.*, 879 F.2d 385, 389 (8th Cir. 1989). Accordingly, courts deciding such motions ordinarily consider: (1) whether the seizure involved a callous disregard for constitutional rights; (2) whether the party seeking return would suffer irreparable injury by a failure to return the property; (3) whether the party seeking return has an individual interest in and need for the property; and (4) whether the party has an adequate remedy at law. *Black Hills*, 967 F.2d at 1239-40. Further, "when the owner of seized property seeks injunctive relief . . . while the case remains in the investigative stage (i.e. before criminal charges are brought), the district court must also balance the government's interest in retaining the property against the owner's right to get it back." *Id.* at 1240.

"It is the movant's burden to demonstrate that the relevant factors are satisfied." *Wilansky v. United States*, 326 F. Supp. 3d 784, 790 (D. Minn. 2018) (citing *Matter of*

*Search of 4801 Fyler Ave.*, 879 F.2d at 387).  Plaintiffs have not even attempted to meet that burden, and thus their motion should be denied.

### A.   Plaintiffs' Motion Does Not Address the Rule 41(g) Factors, Let Alone Demonstrate that Return of the Cell Phone is Appropriate Under Rule 41(g)

The party seeking the return of seized property bears the burden of establishing that the property should be returned.  Plaintiffs plainly have not met their burden, and their Rule 41(g) motion should be denied on that basis alone.  As this Court previously noted, Plaintiffs' Memorandum provides only cursory citations to Rule 41(g).  *See* TRO Order at 3.  Plaintiffs do not recite the language of the rule or the relevant equitable factors and are silent as to why they are entitled to the "extraordinary" relief of returning evidence under Rule 41(g) prior to the institution of criminal charges.  *Matter of Search of 4801 Fyler Ave.*, 879 F.2d at 389.  Even after this Court put them on notice that the existing Memorandum "nowhere explain[s] how the Rule's procedural framework and substantive standards support the request," TRO Order at 4, Plaintiffs chose not to supplement or amend their Memorandum.

### B.   Rule 41(g) Does Not Require the Return of Plaintiffs' Cell Phone

Although Plaintiffs' motion makes no mention of the Rule 41(g) factors, the government addresses the relevant factors here because, even on the merits, Plaintiffs are not entitled to relief.

Courts view the first factor—that is, whether there has been a callous disregard of the Fourth Amendment—to be "the 'foremost consideration' in determining whether a court should exercise its equitable jurisdiction."  *Trump v. United States*, No. 22-13005,

6

2022 WL 4366684, at *7 (11th Cir. Sept. 21, 2022) (quoting *United States v. Chapman*, 559 F.2d 402, 406 (5th Cir. 1977)).  As discussed in more detail below, the seizure of Plaintiffs' phone satisfied every requirement of the Fourth Amendment.  *See infra* pp. 18-19.  Prior to seizing Plaintiffs' phone, the United States obtained a warrant from a detached and neutral magistrate, who reviewed a sworn affidavit and determined that there was probable cause to search the phone for particularly identified evidence.  Law enforcement acted in objective good faith and not with callous disregard of Plaintiffs' rights.  *See Matter of Search of 4801 Fyler Ave.*, 879 F.2d at 388 (declining to find callous disregard of Fourth Amendment in part due to "agents' efforts to comply with the warrant requirement, and the first district judge's approval of the search").  The fact that Mr. Lindell originally admitted that agents acted professionally and courteously during the execution of the warrant also significantly undercuts his current contention that the government has "callously disregarded" his rights.  *See* Ex. 1 at 14:31-50 ("I wanna say this for the record, they were, they were pretty nice guys.  I mean, none of them had an attitude. . . . They were very, very gracious . . . they go, 'We're just doing our job.'").

Turning to the second factor, Plaintiffs will not suffer irreparable injury if relief is not granted.  In this context, "irreparable harm must be actual and not theoretical, and it must be certain and great and of such imminence that there is a clear and present need for equitable relief."  *Wilansky*, 326 F. Supp. 3d at 792 (internal quotation marks and citations omitted).  "Simple unsupported allegations . . . or speculations as to future harm are not sufficient to establish irreparable injury."  *Matter of Search of 4801 Fyler Ave.*, 879 F.2d at 388.  Here, Plaintiffs do not explain precisely what harms will befall them without the

return of the cell phone. *See* Pl. Mem. at 4. Plaintiffs' primary contention appears to be that, unless the cell phone is returned to Mr. Lindell, certain "privileged and constitutionally protected communications" may be disclosed. *Id.* But, as explained in more detail below, these claims are without merit. *See infra* pp. 18-29. The government's seizure of Plaintiffs' phone and subsequent review for responsive records follows the longstanding process codified in the Federal Rules of Criminal Procedure for the search and seizure of electronic storage media. *See* Fed. R. Crim. P. 41(e)(2)(B). And, as Plaintiffs have been informed, the government has already implemented filter protocols to safeguard attorney-client privileged materials and to segregate those materials from review by the investigative team. *See Trump*, 2022 WL 4366684, at *8 (declining to find that plaintiff would be harmed by government review of sensitive information because "permitting the United States to retain the documents does not suggest that they will be released").

Similarly, Plaintiffs cannot establish that they have a need for the seized phone, particularly given that the contents of the phone were backed up to remote cloud storage only days before execution of the warrant (and a copy therefore remains accessible to Plaintiffs). *See* Pl. Mem., Exhibit 2 ("Lindell Decl.") at ¶ 11.

Nor are Plaintiffs without an adequate remedy at law. In other cases seeking pre-indictment return of seized property, "[t]he Eighth Circuit has recognized that, in most situations, the remedy of a post-indictment motion to suppress is an adequate remedy." *Wilansky*, 326 F. Supp. 3d at 793; *Matter of Search of 4801 Fyler Ave.*, 879 F.2d at 389 (movant has adequate remedy to challenge the search through a motion to suppress should criminal proceedings be instituted); *In re Search of Florilli Corp.*, 33 F. Supp. 2d 799, 806

(S.D. Iowa 1998) (same). This is consistent with the Supreme Court's instruction that once the government obtains a valid warrant, "the manner in which [that] warrant is executed is subject to *later* judicial review as to its reasonableness." *Dalia v. United States*, 441 U.S. 238, 258 (1979) (emphasis added); *see also United States v. Grubbs*, 547 U.S. 90, 99 (2006) ("The Constitution protects property owners . . . by interposing, *ex ante*, the deliberate, impartial judgment of a judicial officer . . . between the citizen and the police and by providing, *ex post*, a right to suppress evidence improperly obtained and a cause of action for damages.") (internal quotation marks and citation omitted).

The United States obtained a valid warrant for Plaintiffs' phone and Plaintiffs are not entitled to its return until after the government's investigation and any resulting prosecution. *See United States v. Christie*, 717 F.3d 1156, 1167 (10th Cir. 2013) ("[L]awfully seized property bearing evidence relevant to trial should be returned to its rightful owner once the criminal proceedings have terminated, not before.") (internal quotation marks and citation omitted). Indeed, Rule 41(g) "is not intended to deny the United States the use of evidence permitted by the fourth amendment and federal statutes." Fed. R. Crim. P. 41, Advisory Committee's Notes (1989 amend.). As explained in greater detail below, Plaintiffs may not rely on the Court's equitable jurisdiction to enjoin a federal criminal investigation.[3]

---

[3] Similarly, Plaintiffs cannot use Rule 41(g) to obtain the other relief requested in their motion, as Rule 41(g) permits only the return of property to the movant. *See United States v. Thomason*, No. 19-CR-05, 2020 WL 7041754, at *5 (D. Minn. Dec. 1, 2020) ("Rule 41(g)'s text permits a court to 'return the property to the movant.' The rule does not clearly authorize declaratory relief.").

## II.     Plaintiffs Are Not Entitled to a Preliminary Injunction

In addition to seeking the return of Mr. Lindell's seized cell phone, Plaintiffs moved the Court to preliminarily "enjoin Defendants from reviewing or making any use of data from the cell phone until the issues raised in Plaintiffs' challenge to the legitimacy of the Warrant are resolved." Pl. Mem. at 4.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The party seeking a preliminary injunction bears the burden of establishing the necessity of this equitable remedy." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 316 (8th Cir. 2009). When considering a motion for a preliminary injunction, courts weigh four factors: "(1) the threat of irreparable harm to the moving party; (2) the weight of this harm as compared to any injury an injunction would inflict on other interested parties; (3) the probability that the moving party will succeed on the merits; and (4) the public interest." *Id.* (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). "The core question is whether the equities 'so favor[] the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" TRO Order at 2 (quoting *Dataphase*, 640 F.2d at 113).

The specific request made here is particularly extraordinary, because it would substantially interfere with an ongoing criminal investigation. In any event, Plaintiffs are not entitled to preliminary relief because none of the preliminary injunction factors favors such relief here.

## A.      Plaintiffs Are Not Likely to Succeed on the Merits of Their Claims

Plaintiffs seeking a preliminary injunction must demonstrate that they are likely to succeed on the merits of their claims. Plaintiffs have not made that showing here for two reasons. First, Plaintiffs' lawsuit constitutes an improper collateral attack on an ongoing criminal investigation. Second, even if the Court were to reach Plaintiffs' claims, those claims fail on the merits.

### 1.      Plaintiffs Cannot Use a Civil Action to Collaterally Attack an Ongoing Criminal Investigation

The clear object of Plaintiffs' civil suit is to interfere with an ongoing criminal investigation. Under well-established authority, however, a civil lawsuit may not be used to collaterally attack a criminal investigation. Plaintiffs' claims fall squarely within this prohibition. Accordingly, Plaintiffs cannot succeed on the merits of their claims in this action, and therefore are not entitled to preliminary relief.

#### a.      Federal Courts Are Prohibited from Interfering with Ongoing Criminal Investigations and Proceedings

As this Court has already recognized, "[i]t is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions." TRO Order 4 (quoting *Trump*, 2022 WL 4366684, at *9); *see also Douglas v. City of Jeannette*, 319 U.S. 157, 163 (1943). Moreover, "[p]rospective defendants cannot, by bringing ancillary equitable proceedings, circumvent federal criminal procedure," including federal investigations and prosecutions. *Deaver v. Seymour*, 822 F.2d 66, 71 (D.C. Cir. 1987); *see also Manafort v. U.S. Dep't of Just.*, 311 F. Supp. 3d 22, 30 (D.D.C. 2018) ("It is a sound and well-established principle that a court should not exercise its equitable powers to interfere with or enjoin an ongoing

criminal investigation when the defendant will have the opportunity to challenge any defects in the prosecution in the trial court or on direct appeal.").

The leading case in this area is *Younger v. Harris*, in which the Supreme Court noted "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." 401 U.S. 37, 43-44 (1971). In a criminal case, that adequate remedy exists by virtue of the ability to present defenses in any criminal action. *See id.* at 49. Collectively, these principles "prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted." *Id.* at 44.

Although *Younger* involved a federal civil suit seeking to disrupt a state criminal proceeding, courts have extended *Younger* to prohibit federal court intervention in federal criminal investigations and proceedings. In *Deaver*, a former White House Deputy Chief of Staff filed a civil complaint seeking to halt an investigation into his alleged ethics violations. 822 F.2d at 66-67. The plaintiff alleged that the prosecutor—an independent counsel—was acting in excess of constitutional authority because the independent counsel's appointment was invalid, and he further alleged that allowing the investigation to go forward would result in "the 'continuing destruction of [the plaintiff's] business,' 'injury to his reputation and dignity,' and 'the expenditure of substantial resources in his defense.'" *Id.* at 66-68. On that basis, the plaintiff sought a preliminary injunction to restrain the independent counsel from seeking an indictment, which the district court

denied. *Id.* at 68.

On appeal, the D.C. Circuit held that the lawsuit "constituted an impermissible preemptive civil challenge to a criminal proceeding," and consequently denied the motion for an emergency stay, summarily affirmed the district court's denial of a preliminary injunction, and ordered the case remanded to the district with directions to dismiss the complaint. *Id.* at 66-67. The court noted that although *Younger* arose in the context of state proceedings, "in no case that we have been able to discover has a federal court enjoined a federal prosecutor's investigation or presentment of an indictment." *Id.* at 69. The D.C. Circuit reasoned that a federal prosecution "afford[s] defendants, after indictment, a federal forum in which to assert their defenses—including those based on the Constitution." *Id.* "Congress has established a comprehensive set of rules governing federal criminal prosecutions," the court explained: "the Federal Rules of Criminal Procedure." *Id.* at 71. "These rules provide adequate, although limited, opportunities for defendants to challenge shortcomings in prosecutorial authority." *Id.* The court noted that, in particular, "Rule 12(b)(1) [now 12(b)(3)] of the Federal Rules of Criminal Procedure permits any defendant to raise by motion, after indictment but before trial, a defense based on 'defects in the institution of the prosecution,'" which therefore "suggests that appellant's constitutional challenge is not to be raised in a preindictment civil injunctive action." *Id.* at 70. To do so, the court added, would "undermine the final judgment rule" in criminal cases. *Id.* at 71. After the D.C. Circuit denied relief, the plaintiff sought a stay in the Supreme Court, and Chief Justice Rehnquist denied the request on similar grounds: "There will be time enough for applicant to present his constitutional claim to the appellate courts if and when

13

he is convicted of the charges against him." *Deaver v. United States*, 483 U.S. 1301, 1303 (1987) (Rehnquist, C.J., in chambers).

Since *Deaver*, courts have widely reached the same conclusion regarding the inappropriateness of preemptive civil challenges to criminal investigations and prosecutions. *See* TRO Order at 5 ("'In almost all federal criminal prosecutions, injunctive relief . . . will not be appropriate. Federal courts traditionally have refused, except in rare instances, to enjoin federal criminal prosecutions.'") (quoting *Trump*, 2022 WL 43666844, at *9); *see also In re Al-Nashiri*, 835 F.3d 110, 126-27 (D.C. Cir. 2016) (explaining that the rule applies beyond "court systems that are wholly separate from the federal judicial establishment," and noting that "the availability of legal remedies in Article III courts has historically *barred* criminal defendants from receiving pretrial equitable relief"); *Miranda v. Gonzales*, 173 F. App'x 840, 841 (D.C. Cir. 2006) (unpublished) ("The district court correctly held that, if indicted, [the plaintiff] can protect his rights under the First Amendment and Speech or Debate Clause pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure."); *In re Sealed Case*, 829 F.2d 50, 62 n.60 (D.C. Cir. 1987); *Broussard v. Hollenhorst*, No. 22-CV-0342, 2022 WL 748470, at *5 (D. Minn. Mar. 11, 2022) (collecting cases).

> **b.      This Principle Forecloses Plaintiffs' Civil Lawsuit, As Well As Their Requested Preliminary Relief**

As in *Deaver*, the Court need not wade into the merits of Plaintiffs' claims: "Even were [the Court] disposed to agree entirely with [Plaintiffs'] constitutional argument[s], . . . he has no right to an injunction restraining" an ongoing federal criminal investigation or

any future prosecution.   822 F.2d at 68.   Mr. Lindell is not entitled to an injunction to prevent being investigated by the federal government, nor to hamper any future prosecution.   *See In re Sealed Case*, 829 F.2d at 62 n.60 (noting that "courts do not, except in very limited circumstances . . . entertain the claim of a person subject to a criminal investigation that the investigation is unlawful and must therefore be enjoined").

If the government's investigation were to lead to an indictment, Mr. Lindell would have ample opportunity to raise his concerns regarding the government's investigation and his prosecution.   *See Deaver*, 822 F.2d at 69 (noting that "federal prosecutor[s] typically bring[] cases only in federal court, thereby affording defendants, after indictment, a federal forum in which to assert their defenses—including those based on the Constitution").   In particular, "Rule 12(b)(1) of the Federal Rules of Criminal Procedure permits any defendant to raise by motion, after indictment but before trial," a variety of defenses, objections, or requests.   *Id.* at 70.   For example, to the extent that Plaintiffs believe the warrant was unlawful, Mr. Lindell may move to suppress the use of evidence obtained via that warrant.   Fed. R. Crim. P. 12(b)(3)(C) (discussing a motion for "suppression of evidence"); *see also supra* pp. 8-9 (discussing post-indictment motions to suppress).

As set forth in detail below, Plaintiffs' allegations of constitutional violations lack merit and would not warrant a dismissal of any future indictment or suppression of any evidence.   But regardless of the merits of Plaintiffs' arguments, Rule 12 would provide Mr. Lindell with a mechanism for raising his arguments in any resulting criminal action.   Plaintiffs have offered no explanation as to why such relief would be inadequate.

### c.        No Exception to this Doctrine Applies in this Case

Courts have occasionally found that federal injunctions may be appropriate to restrain state criminal proceedings "where the threatened prosecution chilled exercise of First Amendment rights," and some courts have suggested that a similar exception may apply to federal criminal proceedings. *See Deaver*, 822 F.2d at 69. But that exception is quite narrow, and Plaintiffs cannot evade the well-established rule regarding interference in criminal investigations simply by alleging that the warrant somehow violated Mr. Lindell's First Amendment rights—particularly where Plaintiffs have not shown any likelihood of success on that claim. *See infra* pp. 26-28. To hold otherwise would permit a complete end-run around the rule, so long as a plaintiff claimed that his investigation or prosecution might have some chilling effect on his First Amendment rights.

Some courts have recognized an exception to the *Younger* doctrine where a plaintiff is seeking relief from future prosecution under a statute that encroaches on his First Amendment rights, particularly where the plaintiff is at continued risk of repeated prosecution. *See, e.g.*, *Wooley v. Maynard*, 430 U.S. 705, 710-712 (1977). This limited exception is intended to prevent a situation where an individual must choose between "'intentionally flouting state law'" and "'forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in (another) criminal proceeding.'" *Id.* at 710 (quoting *Steffel v. Thompson*, 415 U.S. 452, 462 (1974)). In *Wooley*, for example, the Supreme Court held that prospective injunctive relief was appropriate where an individual had been prosecuted three times in five weeks for the same constitutionally protected activity and was likely to be prosecuted again. *Id.* at 712 (noting that the situation

16

in that case "is quite different from a claim for federal equitable relief when a prosecution is threatened for the first time"). Similarly, in *Dombrowski v. Pfister*, the Supreme Court held that equitable relief was appropriate to restrict state officials from continuing to prosecute individuals under a state law broadly regulating speech and expression. 380 U.S. 479, 490 (1965). In reaching that conclusion, the Court held that "the abstention doctrine is inappropriate for cases such as the present one where . . . *statutes* are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities." *Id.* at 489-90 (emphasis added); *see also id.* at 486-87 (discussing unique concerns posted by "criminal prosecution under a statute regulating expression").

Here, Plaintiffs are not challenging a criminal statute regulating freedom of speech or expression. Rather, Plaintiffs allege in a conclusory fashion that the warrant itself violates the First Amendment because the seizure of Mr. Lindell's phone could chill his and his associates' willingness to communicate their views to the public. *See* Pl. Mem. at 5, 8 (asserting that "the Warrant" violates Mr. Lindell's First Amendment rights); *see also* Compl. at ¶¶ 41-54 (same); Lindell Decl. at ¶ 26. In other words, this is not a case where a plaintiff has alleged that—absent injunctive relief in civil court—he will be subject to prosecution under an unconstitutional speech-restricting statute, and thus no exception to the *Younger* doctrine (or its federal corollary) applies. *Cf. United States v. Stone*, 394 F. Supp. 3d 1, 15 (D.D.C. 2019) (denying motion for injunctive relief based on traditional abstention principles where "defendant is not being prosecuted for violating a law that specifically restricts free expression"). Accordingly, Plaintiffs cannot cloak their improper claims in the First Amendment to circumvent the principles that traditionally bar

interference with federal investigatory and criminal proceedings.

### 2. Even If the Court Considered the Merits of Plaintiffs' Claims, They are Not Entitled to Relief

For the reasons explained above, the Court need not—and should not—reach the merits of Plaintiffs' claims to resolve their motion for a preliminary injunction. But even if the Court were to reach the merits, Plaintiffs have not shown any likelihood of success on their claims because there is no reason to believe that the warrant, or the government's execution of the warrant, violated Mr. Lindell's constitutional rights.

#### a. The Warrant Complies with the Fourth Amendment

A warrant complies with the Fourth Amendment when it satisfies three elements: (1) it must be issued by a neutral magistrate; (2) it must be based on a showing of "probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense"; and (3) it must "particularly describe the things to be seized, as well as the place to be searched." *Dalia*, 441 U.S. at 255 (internal quotation marks and citations omitted).

The warrant here fully meets these requirements. First, the warrant was issued by a United States Magistrate Judge of this Court pursuant to Federal Rule of Criminal Procedure 41. *See* ECF No. 10-3 ("Warrant") at 2.[4] Second, in issuing that warrant, the Magistrate Judge found probable cause to believe that records and information in Plaintiffs'

---

[4] The government does not—and cannot—concede that this version of a judicially sealed warrant is in fact true and correct. At this stage of the litigation and for purposes solely of responding to the instant motion, however, the government will assume that this version of the warrant is accurate. Page references to this warrant use the pagination from the ECF stamps.

phone constituted evidence of three enumerated offenses. *Id.* Finally, the warrant identified the place to be searched and the items to be seized with particularity. Attachment A specified the precise location to be searched—the person of Michael Lindell. *Id.* at 3. Attachment B authorized law enforcement to take the "physical cellular telephone" (identified by a specific call number) and then further seize 24 specific categories of records and information within the phone that constitute evidence of three enumerated offenses. *Id.* at 4. The records and information subject to seizure are further limited by a date range ("since November 1, 2020") and a list of seven individuals who must be linked to the violations in any seized evidence. *Id.*

Such a warrant satisfies the particularity requirement. *See United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999) (holding that "the words '[r]ecords, documents, receipts . . .' were sufficiently particular to preclude the exercise of any illegal discretion by the executing officers"); *see also United States v. Kuc*, 737 F.3d 129, 132-33 (1st Cir. 2013) (holding that warrant with broader formulation than this warrant—"'[a]ll records . . . and tangible objects that constitute evidence, fruits, and instrumentalities of violations of [specified criminal statutes] including, without limitation,' certain enumerated categories of items"—satisfied the particularity requirement); *United States v. Adjani*, 452 F.3d 1140, 1148-49 (9th Cir. 2006) (holding that computer warrant with similar formulation satisfied particularity requirement). Under *Dalia*, these are the only elements required to obtain a warrant and the warrant here is therefore valid. Beyond these requirements, the manner of

executing a warrant is "generally left to the discretion" of the government, so long as it is reasonable. *Dalia*, 441 U.S. at 258.[5]

> **b.** **The Government's Process for Executing the Warrant was Reasonable and Specifically Envisioned by Federal Rule of Criminal Procedure 41**

The seizure of Plaintiffs' phone followed by a subsequent review for responsive records is reasonable. It is not only consistent with longstanding practice, but it also follows the two-step process codified in Federal Rule of Criminal Procedure 41 for the search and seizure of electronic storage media.[6] In the first step, the warrant authorizes the seizure of the entire storage media—here, the phone. In the second step, the government inspects records on the phone to identify files that contain evidence of the enumerated crimes, the parameters of which are specified in Attachment B of the warrant. Here, those

---

[5] While not directly addressed in their Memorandum, Plaintiffs' Complaint alleges that Mr. Lindell suffered a Fourth Amendment violation when he was *personally* seized without a warrant. *See* Compl. at ¶¶ 67-76. However, the warrant for the phone identified Mr. Lindell's person as the place to be searched in Attachment A. *See* Warrant at 2-3. It is axiomatic that law enforcement may temporarily detain him in order to execute the search. "[A]n officer's authority to detain incident to a search is categorical: it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). Moreover, as Mr. Lindell stated on his television show following execution of the warrant, he was never under arrest. *See, e.g.*, Ex. 1 at 13:14-13:25 ("I said, you know, you guys, I said, 'Are you gonna arrest me?' . . . They go, 'No, no, we're not gonna arrest you.'").

[6] Federal Rule of Criminal Procedure 41(e)(2)(B) provides that a warrant "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review."

parameters include 24 categories of evidence that relate to three enumerated offenses limited in scope by a date range and an identified list of subjects of the investigation. *See* Warrant at 4-7. Because reviewing agents may only seize the specified responsive records and information, their discretion is appropriately constrained.

Contrary to Plaintiffs' mischaracterizations, the warrant does not permit the government to seize information pertaining to "every single aspect of [Plaintiffs'] business and personal life," such that it constitutes a general warrant. Pl. Mem. at 8. A general warrant "specified only an offense—typically seditious libel—and left to the discretion of the executing officials the decision as to which persons should be arrested and which places should be searched." *Steagald v. United States*, 451 U.S. 204, 220 (1981); *see also Wheeler v. City of Lansing*, 660 F.3d 931, 941 (6th Cir. 2011) ("[G]eneral warrants that fail to describe with particularity the things to be searched for and seized create a danger of unlimited discretion in the executing officer's determination of what is subject to seizure and a danger that items will be seized when the warrant refers to other items.") (internal quotation marks and citation omitted). Here, the warrant permits the government to search Plaintiffs' phone pursuant to the two-step process specified in Rule 41. It does not become a general warrant merely because reviewing agents must separate responsive from non-responsive records.

Indeed, in the context of physical documents, it is well established that an otherwise valid warrant authorizes officers to review broad collections of documents to determine whether they are relevant to the crimes specified in the warrant. "In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to

determine whether they are, in fact, among those papers authorized to be seized." *Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976); *see also United States v. Ulbricht*, No. 14-CR-68, 2014 WL 5090039, at *14 (S.D.N.Y. Oct. 10, 2014) (two-step warrants are not "general warrants" because "[i]t has long been perfectly appropriate to search the entirety of a premises or object as to which a warrant has issued based on probable cause, for specific evidence as enumerated in the warrant, which is then to be seized."). This is common sense, as officers cannot determine whether a document falls within the scope of the warrant without reviewing it. To adopt Plaintiffs' rationale would turn every warrant to search a phone into a general warrant. *See United States v. Grimmett*, 439 F.3d 1263, 1269-70 (10th Cir. 2006) (a warrant to search "any [computer] equipment" and "any and all computer software" was "not an impermissible general search" because a computer search "may be as extensive as reasonably required to locate the items described in the warrant").

The two-step process was codified into Rule 41 in 2009, and the Advisory Committee's Notes accompanying that amendment further belie Plaintiffs' claim. As those notes explain, the two-step process is "inherent in searches for electronically stored information" because "electronic storage media commonly contain such large amounts of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location." Fed. R. Crim. P. 41, Advisory Committee's Notes (2009 amend.). As the Eighth Circuit has recognized, the Rule thus "acknowledges the need for a two-step process: officers may seize or copy the *entire storage medium* and review it later to determine what electronically stored information falls within the scope of the warrant." *United States v. Beckmann*, 786 F.3d 672, 680 n.6

22

(8th Cir. 2015) (quoting Fed. R. Crim. P. Advisory Committee's Notes (2009 amend.)) (emphasis added).

The Eighth Circuit and other circuit courts across the country have widely approved of the two-step process for executing warrants for electronic evidence, both before and after the 2009 amendment to Rule 41. *See United States v. Bach*, 310 F.3d 1063, 1065-68 (8th Cir. 2002) (constitutionally reasonable for provider to produce "all of the information" from an email account to the government, who would then review for responsive records); *see also United States v. Stabile*, 633 F.3d 219, 233-34 (3d Cir. 2011) (noting that "practical realities of computer investigations preclude on-site searches"); *Grimmett*, 439 F.3d at 1268-70 (holding that a warrant for the search of "any and all" computer hardware and software for certain content authorized both the seizure and subsequent search of the defendant's computer files); *Guest v. Leis*, 255 F.3d 325, 335 (6th Cir. 2001) ("Because of the technical difficulties of conducting a computer search in a suspect's home, the seizure of the computers, including their content, was reasonable in these cases to allow police to locate the offending files."); *United States v. Hay*, 231 F.3d 630, 637-38 (9th Cir. 2000) (holding that officers were justified in removing computers for off-site search "because of the time, expertise, and controlled environment required for a proper analysis"); *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999) ("As a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images [sought].")). As the Sixth Circuit has explained, "[t]he federal courts are in agreement that a warrant authorizing the seizure of a defendant's home computer equipment and digital media for a

subsequent off-site electronic search is not unreasonable or overbroad, as long as the probable-cause showing in the warrant application and affidavit demonstrate a sufficient chance of finding some needles in the computer haystack." *United States v. Evers*, 669 F.3d 645, 652 (6th Cir. 2012) (internal quotation marks and citation omitted).

Nor does the Fourth Amendment require specific search protocols suggested by Plaintiffs, such as the use of keyword searches. *See* Pl. Mem. at 9-10. The Fourth Amendment is not so "extreme to require that . . . the court must set forth precisely the procedures to be followed by the executing officers." *Dalia*, 441 U.S. at 258. Plaintiffs have not cited any Eighth Circuit case that requires such search protocols. Indeed, no federal circuit court currently requires such protocols and for good reason. For example, keyword searches may capture some responsive documents, but they may miss large quantities of relevant evidence because targets may intentionally or unintentionally use different terminology than the keywords, they may misspell words, or they may communicate incriminating messages through words that appear innocuous on their own, such as "I did that thing you asked." Accordingly, federal courts have rejected arguments that searches of electronic evidence must use keyword searches. *See, e.g.*, *United States v. Ulbricht*, 858 F.3d 71, 101-02 (2d Cir. 2017) (rejecting defendant's argument that warrants for Google and Facebook accounts should require keyword searches), *abrogated on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018); *United States v. Crespo-Rios*, 645 F.3d 37, 43-44 (1st Cir. 2011) (holding that "government agents cannot simply search certain folders or types of files for keywords" because they could miss relevant evidence); *Adjani*, 452 F.3d at 1149-50 (holding that restricting computer search to specific

24

search terms "would likely have failed to cast a sufficiently wide net to capture the evidence sought").  Under *Andresen* and Rule 41, the government may reasonably review records on Plaintiffs' phone to determine whether they fall within the warrant's scope.  The government is not required to adopt an unworkable keyword search procedure.

As to Plaintiffs' suggestions that the government is not respecting attorney-client privilege, Pl. Mem. at 2, 4, the government has implemented ordinary filter protocols to safeguard attorney-client privileged materials and segregate those materials from review by any member of the investigative team.

The use of the two-step process is reasonable and does not turn an otherwise valid warrant into a general one.  Rather, it is specifically authorized by Rule 41 and approved by federal courts across the country including the Eighth Circuit.

### c. The Government Did Not Improperly Withhold Material Information in Applying for the Warrant

Plaintiffs speculate that the government "likely" withheld material information from the affidavit in support of the search warrant.  *See* Pl. Mem. at 12-13.  They couch this claim within their Fifth Amendment Due Process Clause allegation in the Complaint, *see* Compl. at ¶ 79, and never invoke the Fourth Amendment.  Accordingly, Plaintiffs appear to allege that their substantive due process rights were violated.

"Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998); *see also United States v. Salerno*, 481 U.S. 739, 751 (1987) (violation must "offend[] some principle of justice so rooted in

the traditions and conscience of our people as to be ranked as fundamental") (internal quotation marks and citation omitted). Plaintiffs' bare speculation that the government withheld evidence—including, for example, the Department of Justice's purported "conflict of interest in investigating matters related to the 2020 presidential election," Pl. Mem. at 13—is insufficient to establish a likelihood of proving that any government conduct at issue here "shocks the conscience." *Weiler*, 137 F.3d at 1051; *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (noting that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

### d. The Execution of the Warrant Does Not Violate Plaintiffs' First Amendment Rights

Plaintiffs' assertion that the warrant violates Mr. Lindell's First Amendment rights is also groundless. Pl. Mem. at 6, 8.[7] Of course Mr. Lindell (like any citizen) has First Amendment rights to associate with others and to petition the government, but "[t]he [F]irst [A]mendment does not protect against investigation of suspected criminal activity." *Pleasant v. Lovell*, 876 F.2d 787, 803 (10th Cir. 1989). The government's investigatory interests in seizing and searching an electronic device, pursuant to a warrant and within the bounds of the Fourth Amendment, are not vitiated by Plaintiffs' right to free association. *See, e.g.*, *Reps. Comm. for Freedom of Press v. Am. Tel. & Tel. Co.*, 593 F.2d 1030, 1051 (D.C. Cir. 1978) ("The broad scope of acceptable government investigation, so necessary to the secure enjoyment of [a]ll liberties, unavoidably places a burden on [a]ll citizens.").

---

[7] Plaintiffs may only assert their own First Amendment rights and not those of unnamed third parties. *Tileston v. Ullman*, 318 U.S. 44, 46 (1943).

Indeed, First Amendment rights are "[s]ubject to the general and incidental burdens that arise from good faith enforcement of otherwise valid criminal and civil laws that are not themselves solely directed at curtailing the free flow of information." *Id.* "Properly administered, the preconditions for a warrant—probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness—should afford sufficient protection against the [First Amendment] harms that are assertedly threatened by warrants." *Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978); *see Gordon v. Warren Consol. Bd. of Educ.*, 706 F.2d 778, 781 n.3 (6th Cir. 1983) ("[P]hysical surveillance consistent with Fourth Amendment protections in connection with a good faith law enforcement investigation does not violate First Amendment rights, even though it may be directed at communicative or associative activities.").

Plaintiffs miss the mark by relying on cases where the government did not advance as substantial an interest as is served by the judicially authorized seizure of Mr. Lindell's phone. In *Americans for Prosperity Foundation v. Bonta*, the Supreme Court held that California's indiscriminate collection of charities' donor information chilled donors' associational rights and did not advance a legitimate interest since the State had not actually used that information in any investigations. *See* 141 S. Ct. 2373, 2386 (2021). Likewise in *NAACP v. State of Alabama ex rel. Patterson*, the State of Alabama did not provide an adequate interest furthered by the compelled disclosure of all members of the local NAACP chapter. *See* 357 U.S. 449, 463 (1958). Here, the government's substantial interest is served by the seizure: obtaining property that a neutral magistrate found probable cause to believe may contain evidence of criminal activity. In such circumstances, Plaintiffs' First

Amendment interests do not overcome the government's interest in effectively and impartially investigating criminal activity. *See, e.g.*, *Lovell*, 876 F.2d at 803; *Eastman v. United States*, No. 22-MC-23, 2022 WL 2763436, at *2-3 (D.N.M. July 15, 2022) (seizure of cell phone pursuant to warrant likely did not burden First Amendment rights). "[A]n application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally." *New York v. P.J. Video, Inc.*, 475 U.S. 868, 875 (1986). In sum, the government's seizure of Mr. Lindell's phone was limited by the terms of the warrant—there is nothing unique about the First Amendment rights at play nor troubling about the application of the Fourth Amendment in this matter. *See supra* pp. 18-25.

        **e.**    **Plaintiffs Have Not Even Argued, Let Alone Shown, That They Are Likely to Succeed on the Merits of their Remaining Claims**

Plaintiffs' Complaint contains five counts, each of which alleges a violation of Mr. Lindell's constitutional rights. *See generally* Compl. at ¶¶ 41-81. Plaintiffs' Memorandum sets out a brief description of each count in the Complaint and then asserts that "Plaintiffs are likely to succeed on the merits of each count," *see* Pl. Mem. at 5-8, but proceeds to offer argument only with regard to the alleged violations of the First, Fourth, and Fifth Amendments that are the subject of Counts I, III, and V.[8] *Compare* Pl. Mem. at 8-12, *with*

---

[8] With respect to Count V, Plaintiffs' Memorandum advances an argument related to the (meritless) claim that the government intentionally withheld material information from Magistrate Judge Leung when it applied for the warrant, but it does not address the

Compl. at ¶¶ 41-54, 59-66, 79.  Because Plaintiffs' Memorandum does not contain any argument in support of Counts II and IV, or most of the issues raised by Plaintiffs' Count V, Plaintiffs have not shown even a remote possibility of success on those claims.

### B.    The Other Preliminary Injunction Factors Counsel Against a Preliminary Injunction

The remaining three preliminary injunction factors uniformly weigh against an injunction.  Plaintiffs have not established any irreparable harm if the government continues to access Mr. Lindell's cell phone, which was properly seized pursuant to a lawful warrant.  The balance of the equities and the public interest also strongly favor the government.

### 1.    Plaintiffs Have Not Established Irreparable Harm

To establish irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996) (per curiam).

Here, Plaintiffs' sole argument regarding irreparable harm is that "[t]he violation of his constitutional rights, including his First and Fourth Amendment rights, constitute an immediate and irreparable injury if a preliminary injunction is not granted." Pl. Mem. at 14. As such, Plaintiffs' claim of irreparable harm rises or falls with the strength of their constitutional claims.  Where, as here, the moving party fails to show that it is likely to succeed in establishing that its constitutional rights have been violated (*see supra* pp. 10-

---

remaining allegations in Count V. *See* Pl. Mem. at 12; *see also* Compl. at ¶¶ 79 (allegations related to withholding of information), 81 (other allegations regarding the execution of the warrant).

29), it also fails to establish a threat of irreparable harm that warrants preliminary injunctive relief. *See Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015) (affirming the district court's ruling that where the plaintiff is "unlikely to succeed in showing his First Amendment rights have been violated," he also "has not shown a threat of irreparable harm that warrants preliminary injunctive relief"); *see also Planned Parenthood Minn., N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 737 n.11 (8th Cir. 2008); *Let Them Play MN v. Walz*, No. 20-CV-2505, 2020 WL 7425278, at *7 (D. Minn. Dec. 18, 2020) ("[W]hen a court concludes that plaintiffs are unlikely to succeed in showing their First Amendment rights have been violated, then such plaintiffs also fail[] to show a threat of irreparable harm warranting preliminary injunctive relief."). Because Plaintiffs are not likely to succeed in showing any constitutional violation, they have also failed to show a threat of irreparable harm warranting their requested relief.

### 2. The Balance of the Equities and the Public Interest Strongly Favor the Government

The final two factors to consider are the balance of the relative harms and the public interest. These factors "merge" when a plaintiff seeks injunctive relief against the government. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

As with irreparable harm, Plaintiffs' argument regarding the balance of the equities and the public interest relies entirely on the assumption that Mr. Lindell's constitutional rights have been violated. *See* Pl. Mem. at 15-16 (arguing that "[t]he public interest is always served by assuring that the requirements and prohibitions of the Constitution are faithfully enforced"). Because Plaintiffs are not likely to show that the government

violated the Constitution, their argument has little merit.

The public has a significant "interest in effective law enforcement." *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *Barnes v. Dormire*, 251 F.3d 767, 769 (8th Cir. 2001) (same). That interest would be materially harmed if litigants could successfully enjoin federal criminal investigations and prosecutions simply by bringing civil lawsuits designed to impede criminal investigations. Likewise, the public has an important interest in the prompt resolution of criminal matters. *See United States v. Craig*, 907 F.2d 653, 656 (7th Cir. 1990); *see also United States v. Williams*, 511 F.3d 1044, 1053-54 (10th Cir. 2007). That interest, too, will be materially harmed if Plaintiff were permitted to delay the government's investigation for an indefinite period (which is effectively the relief they seek here).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

Dated: October 6, 2022                                    Respectfully submitted,

ANDREW M. LUGER                              COREY R. AMUNDSON
United States Attorney                             Chief, Public Integrity Section
                                                              U.S. Department of Justice


By: /s/ Craig R. Baune                            By: /s/Jonathan E. Jacobson
Craig R. Baune                                        Jonathan E. Jacobson
Assistant U.S. Attorney                          Trial Attorney
Attorney ID No. 331727                          Public Integrity Section
600 United States Courthouse                 U.S. Department of Justice
300 South Fourth Street                          Ill. Bar No. 6317721
Minneapolis, MN 55415                          1301 New York Ave. NW, 10th Fl.
Phone: 612-664-5600                              Washington, DC 20005
Email: Craig.baune@usdoj.gov              Phone: (202) 514-1412
                                                              Email: jonathan.jacobson@usdoj.gov


                                                              JOHN T. LYNCH
                                                              Chief, Computer Crime and
                                                              Intellectual Property Section
                                                              U.S. Department of Justice


                                                              By: Frank Lin
                                                              Frank Lin
                                                              Senior Counsel
                                                              Computer Crime and Intellectual
                                                              Property Section
                                                              U.S. Department of Justice
                                                              Wa. Bar No. 48617
                                                              950 Pennsylvania Ave., N.W. Suite
                                                              600
                                                              Washington, DC 20530
                                                              Phone: (202) 514-1026
                                                              Email: frank.lin@usdoj.gov

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f) AND (h)

I hereby certify that this filing complies with the word limit requirement of Local Rule 7.1(f) and the type-size limit of Local Rule 7.1(h). Specifically, this filing is comprised of 8,916 words, exclusive of the caption, signature block, and this certificate. The type size is 13-point font.

*/s/ Jonathan E. Jacobson*
Jonathan E. Jacobson
Trial Attorney, Public Integrity Section
