**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| MICHAEL J. LINDELL and MYPILLOW, INC., | Case No. 22-cv-02290-ECT-ECW |
| Plaintiffs, | |
| v. | **PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR RETURN OF PROPERTY PURSUANT TO FED. R. CRIM. P. 41(g)** |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

**I.
INTRODUCTION**

While the Government has the right to investigate United States citizens, this right is circumscribed by the limits of the Constitution. The Government may not take and look through a person's private, privileged, or personal information wholly unrelated to any investigation. The Government's failure to implement a process to only review the very few pieces of data from Mr. Lindell related to the Government's Colorado investigation is a violation of Mr. Lindell's constitutional rights. The search of electronic data on a cell phone creates certain challenges for investigators to ensure that an individual's constitutional rights are protected. Those challenges were not met here.

The Government's lengthy opposition memorandum largely ignores the relief actually requested in Plaintiffs' Motion ("Motion" or "Mot.") (Doc. 9). The Government analyzes in great detail numerous matters not placed at issue by the Motion and ignores important matters raised by the Motion. The Government fails to negate or outweigh the

1

reasons stated in Plaintiffs' opening Memorandum (Doc. 10) ("Pl. Mem.") for the relief

actually requested by Plaintiffs. Accordingly, the Motion should be granted.

## II.
## ARGUMENT

### A. The Government Argues a Nonexistent Motion, Ignoring the Issues Before the Court.

The Government ignores several important matters raised by Plaintiffs while

arguing at length against relief not sought by Plaintiffs. Its Opposition effectively argues

a different motion than the Motion actually brought by Plaintiffs.

### 1. The Opposition Concedes Plaintiffs' Arguments by Failing to Respond to Them.

By failing to respond to several specific arguments raised in Plaintiffs'

Memorandum in support of their Motion, the Government concedes these matters.

(1) In responding to Plaintiffs' Fourth Amendment overbroad search contentions, the

Government declined to address the cases Plaintiffs rely upon, *Carpenter v.*

*United States*, 138 S. Ct. 2206 (2018), *Riley v. California,* 573 U.S. 373 (2014),

and *In re Search of Apple iPhone*, 31 F.Supp.3d 159 (D.D.C. 2014). Pl. Mem. at 8-

11; Opp. at 18-19. Instead, the Government relies upon older decisions made

before the significant shift in the courts' application of the Fourth Amendment to

modern innovations in electronic communications and concern about over-seizure

of electronic data stored on cell phones. *Id*. The Government does not cite

*Carpenter* except to note that *Carpenter* "*abrogate[s] on other grounds*" one of

the cases relied upon by the Government. Opp. at 24.

(2) Plaintiffs posited that the Government could have, without interfering with its investigation, issued a subpoena. Pl. Mem. at 7. This would have avoided the inherently overbroad nature of the Warrant search and the Constitutional violation now asserted by Plaintiffs. The Government has ignored this issue and has made no argument at all as to why that would not have been sufficient. No indication of emergency, no indication of destruction risk, no indication of any compromise that would have resulted. And no declaration to support any such assertions.

(3) Plaintiffs argued that the Government likely withheld or misstated material information when applying for the Warrant, citing basic Fourth Amendment law applicable to warrants that would make the Warrant invalid. Pl. Mem. at 12-13 (citing *Z. J. by and through Jones v. Kansas City Bd. of Police Commrs.*, 931 F.3d 672, 686 (8th Cir. 2019); *United States v. Randle*, 39 F.4th 533, 537-38 (8th Cir. 2022); *Hartman v. Bowles*, 39 F.4th 544, 546 (8th Cir. 2022)). Plaintiffs cited specific highly relevant information that should have been provided to the Magistrate Judge. In response, the Government mischaracterizes Plaintiffs' argument as a Fifth Amendment substantive due process argument. Opp. 25-26. The Government declines to cite or respond to the Fourth Amendment law in the cases cited by Plaintiffs. *Id*. Nor does the Government provide any argument, testimony, or other evidence that the information Plaintiff asserts should have been provided to the Magistrate Judge was in fact provided or why it was not provided. The Government fails to respond at all to the issue of withholding material information from the Warrant application.

(4) Plaintiffs raised the issue that it appears the only way the Government could have located Mr. Lindell to serve the Warrant was by unconstitutional means, that is through a tracking device, cell site location information, or other means of tracking and that this was done without a warrant. Pl. Mem. at 6. The Government does not deny this.

(5) Plaintiffs asserted that Mr. Lindell was detained and held unable to leave for an extended period of time during which time he was questioned about information related to the criminal investigation and he was not given his Miranda rights. Moreover, when he asked to speak with his attorney he was told "No." Pl. Mem. at 7.  These issues were also not addressed by the Government.

The Government's failure to respond to these issues is a waiver and indicates that there is no good response.

### 2.  The Opposition Attacks a Motion Not Made.

Plaintiffs' Motion asks for three forms of substantive relief: "that Defendants (1) return to Mr. Lindell the cell phone seized from Mr. Lindell on September 13, 2022; (2) cease all attempts to access data stored on the cell phone; and (3) refrain from accessing any information already taken from the cell phone." Mot. at 1.[1] That is it. The Motion does <u>not</u> ask the Court to enjoin any criminal investigation, or to enjoin any hypothetical indictment or prosecution of anyone. The Government's Opposition invests much effort

---

[1] The Motion also included a request for expedited handling, which the Court has addressed, and a request to maintain the status quo. *See* Mot. at 1. Those matters are no longer at issue. Plaintiffs' request to obtain access to the Warrant application affidavit(s) has been separately briefed. *See* Mem. in Supp. of Mot. to Obtain Access to Warrant App. Materials, Doc. 38.

in setting up and then knocking down arguments against an imaginary motion, not brought by Plaintiffs, for an injunction against a criminal investigation or prosecution. These considerations are not germane to the issues before the Court.

(1) The Government asserts, "The clear object of Plaintiffs' civil suit is to interfere with an ongoing criminal investigation." Defs.' Opp. to Pls.' Mot. for Prelim. Inj. at 11 (Doc. 49) ("Opp."). Not so. The object of Plaintiffs' civil suit and the Motion at issue here is to retrieve Mr. Lindell's cell phone and information that were unconstitutionally taken from him. Mot. at 1.

(2) The Government argues that "courts of equity do not ordinarily restrain criminal prosecutions," that "a court should not exercise its equitable powers to interfere with or enjoin an ongoing criminal investigation," that a court should not "act to restrain a criminal prosecution." Opp. at 11, 11-12, 12. Plaintiffs' Motion *does not ask* the Court to restrain or enjoin any criminal prosecution or criminal investigation, but rather to simply make sure the investigation is carried out in a constitutionally sound manner. The Motion asks the Court to order the return of Mr. Lindell's phone and information back that were unconstitutionally taken from him. Mot. at 1.

(3) The Government argues that "preemptive civil challenges to criminal investigations and prosecutions" are inappropriate and that "Mr. Lindell is not entitled to an injunction to prevent being investigated by the federal government, nor to hamper any future prosecution." Opp. at 14, 15. Plaintiffs' Motion does not challenge any criminal investigation or prosecution, nor does it ask the Court to

enjoin any investigation of Mr. Lindell. The Motion asks for Mr. Lindell's phone and information back that were unconstitutionally taken from him. Mot. at 1.

(4) The Government argues that there is no exception applicable here for a "federal injunction[] . . . to restrain state [or federal] criminal proceedings" based on chilled exercise of First Amendment rights, and no exception applicable here for "relief from future prosecutions under a statute that encroaches on First Amendment rights." Opp. at 16. Plaintiffs' Motion does not ask for an injunction to restrain any criminal proceeding or to foreclose any future prosecution. The Motion asks for Mr. Lindell's phone and information back that were unconstitutionally taken from him. Mot. at 1.

The Government's extensive arguments concerning the parameters under which a criminal investigation or prosecution can be enjoined by a federal court, Opp. 11-17, are attempts to misdirect the Court's attention to questions not raised by the Motion.

**B. Preliminary Injunctive Relief Is Appropriate and Necessary.**

Plaintiffs' Motion asserts that the Government violated Plaintiffs' rights when obtaining and executing the Warrant.  Based on these violations, Plaintiffs have been irreparably injured and request that the Court issue an order that prohibits the Government from continuing to rummage through Mr. Lindell's private material and requires the Government to return the cell phone. That is, to return matters to the same conditions that would have existed in the absence of the Government's unconstitutional actions. Plaintiffs also request that to the extent that any information is retained by the Government, a Special Master be appointed to review that information and determine if

6

the information that has been taken is limited to information specifically identified in the Warrant (and Plaintiffs reserve the right to challenge even this information from ever being used in any future proceeding). The four factors of *Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008) for preliminary injunctive relief weigh in favor of granting Plaintiffs the relief they seek.

### 1. Plaintiffs Are Likely to Succeed on the Merits.

The Government violated Mr. Lindell's constitutional rights, and no procedural rule prevents Mr. Lindell from seeking redress for those violations now.

### a. The Government Violated Mr. Lindell's Rights.

Plaintiffs' Motion and the verified Complaint show facts that establish the Government's callous disregard for Plaintiffs' constitutional rights.

**Overbreadth.** Most significantly, the Warrant itself is on its face unconstitutionally overbroad, for it purports to authorize the seizure and review of Mr. Lindell's entire cell phone without specifying any method by which the Government will limit its search to materials reasonably likely to yield information relevant to its investigation, and without specifying any method by which the Government will avoid reviewing Mr. Lindell's private, personal, and attorney-client privileged communications. Warrant (Doc. 35-1); *In re Search of Apple iPhone*, 31 F.Supp.3d at 164-67; *cf. Carpenter*, 138 S. Ct. at 2221-2223, *Riley,* 573 U.S. 373. The Warrant is also overbroad because it purports to authorize the seizure of two years of data from the cell phone.

The Fourth Amendment "of course" prohibits "General warrants." *In re Grand Jury Proceedings*, 716 F.2d 493, 497 (8th Cir. 1983) (quoting *Andresen v. Maryland*, 427

U.S. 463, 480 (1976)). "The problem [posed by the general warrant] is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings . . . . [The Fourth Amendment addresses the problem] by requiring a particular description of the things to be seized. . . . This requirement makes general searches . . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Id*. (quotations omitted).

Applying the Fourth Amendment's prohibition of general warrants to the context of the new technology of the cell phone requires courts to recognize that cell phones are "based on technology nearly inconceivable just a few decades ago" and "implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Riley*, 573 U.S. at 385, 393. Because of a cell phone's "immense storage capacity," a search of a cell phone "would typically expose to the government far *more* than the most exhaustive search of a house." *Id*. at 393, 396. A warrant that authorized the Government to seize large quantities of business files and then rummage around in them seeking incriminating evidence was held unconstitutionally overbroad in *In re Grand Jury Proceedings*, 716 F.2d at 498 (warrant authorized "the seizure of all documents in Young's bail bond operations without any enumeration or specificity"). The Warrant authorizing indiscriminate seizure and search of Mr. Lindell's cell phone is even more egregious, for the data on the phone is not limited to business records but also includes his personal contacts and communications.

A warrant to search a cell phone must state with particularity what files the Government is authorized to review on the phone. *In re Search of Apple iPhone*, 31 F. Supp. 3d at 165-67; *In re Search of Odys Loox Plus Tablet*, 28 F. Supp. 3d 40, 45-46 (D.D.C. 2014); *In re Cellular Tels.*, No. l4-MJ-8017-DJW, 2014 U.S. Dist. LEXIS 182165, at *26-30 (D. Kan. Dec. 30, 2014). The Warrant here provides no limitation on the Government's review of the data on Mr. Lindell's cell phone. It is an unconstitutional general warrant, purporting to authorize the Government to rummage through any and all of Mr. Lindell's personal data without regard to whether it relates to the Government's investigation or not.

A recent case in this District addressing the Government's use of two-step warrants is instructive. In *United States v. Moulder*, No. 20-232(7) (JRT/BRT), 2022 U.S. Dist. LEXIS 151606 (D. Minn. Aug. 24, 2022), the Government obtained a warrant to search an individual's email account. *Id*. at *2. The warrant first "requested the service provider, here Google, to produce all the records, information, files, and documents associated with the subject email address," and second listed "a narrower scope of documents that the government would then seize." *Id.* at *9. The Court analyzed the use of such two-step warrants in searching electronic records, concluding that they are not "*per se* unconstitutional" but are still subject to "Fourth Amendment requirements." *Id*. at 10. The Court found the two-step warrant in that case "troublesome," ultimately deciding that the list of items to be seized in step two of the warrant was sufficiently particular to satisfy constitutional requirements but finding step one of the warrant unconstitutionally overbroad. *Id*. at 10-11. "The government cannot ask for every piece of information

9

related to Moulder's email account without having probable cause to access all that information." *Id*. at 12. The Court concluded that permitting the government to obtain all records in the email account "would essentially sanction the government's use of a modern-day general warrant, granting the government access to arguably some of the most sensitive pieces of information in an individual's life." *Id*.

The Warrant in this case suffers the same constitutional infirmity as the warrant in *Moulder*. The Government cannot seize every piece of information on Mr. Lindell's cell phone without having probable cause to access all of that information – which it does not have.

**Attorney-Client Privilege.** The Government asserts that it is using a "filter protocol" to "safeguard attorney-client privileged materials and segregate those materials from review by any member of the investigative team." Opp. at 3; *see id*. at 8, 25. The Fourth Circuit has held such a practice improper, because the Department of Justice cannot properly exercise the judicial function of determining whether another party's communications are subject to the attorney-client privilege. *In re Under Seal (Search Warrant Issued June 13, 2019)*, 942 F.3d 159, 181 (4th Cir. 2019).[2] A judicially-appointed Special Master, not Government agents, would be the only constitutionally permissible person who could review and filter the overbroad materials seized from Mr.

---

[2] *See also United States v. Heppner*, No. 05-94 (JRT/FLN), 2005 U.S. Dist. LEXIS 52325, at *3 n.1 (D. Minn. Nov. 23, 2005) ("The Court shares the Magistrate Judge's skepticism regarding the prosecution's suggestion that use of a 'taint reviewer' was adequate to protect defendants' Sixth Amendment rights . . . . [because] employing a taint team is 'not unlike assigning the fox to guard the henhouse.'").

Lindell. Even if a filter team process could be used by the Government, the Government's assertions about using a filter team here are unsupported by any evidence and extremely vague. Opp. at 3, 8, 25. Its representations do not commit the Government to any particular interpretation of what "safeguard" or "segregate" mean, nor do the Government's representations prevent discussion between whoever the Government allows to review Mr. Lindell's attorney-client privileged materials and the "investigative team." The Government's assertions do not explain why Government employees outside the "investigative team" have the right to read Mr. Lindell's privileged communications.

Notably the Government does not even *claim* that its filter team is tasked with preventing the "investigative team" from broadly viewing any and all of Mr. Lindell's sensitive personal information that does not qualify as attorney-client privileged, thereby violating the Fourth Amendment prohibition against overbroad searches and seizures and the First Amendment's protection of Mr. Lindell's freedom of association. The Government's handling of Mr. Lindell's cell phone gives it unfettered access to know all of his contacts and associations *without regard to whether those contacts and associations have any connection to the Colorado investigation.* The effect – whether intended or not – will be to intimidate other persons from communicating and associating with Mr. Lindell, chilling his First Amendment rights.

**Failure to State the Search Methodology.** A warrant to search a cell phone must state with particularity the search methodology the Government will use to find information that it has probable cause to see, without rummaging through information that it lacks probable cause to see. *In re Search of Apple iPhone*, 31 F. Supp. 3d at 169

11

("Until the government actually explains how the search will proceed, and thus how the government intends to limit its search of data outside the scope of the warrant, this warrant cannot be issued."); *In re Search of Odys Loox Plus Tablet*, 28 F. Supp. 3d at 46 (government "must provide this Court with sufficient information such that it will not be authorizing the 'general, exploratory rummaging in a person's belongings' that the Fourth Amendment prohibits"); *In re Cellular Tels.*, No. l4-MJ-8017-DJW, 2014 U.S. Dist. LEXIS 182165, at *39 (requiring "an explanation of the government's search techniques" to issue warrant). The Government here has provided no information regarding any search methodology to limit its search of Mr. Lindell's phone. This is fatal to its reliance on the Warrant. The Government's purported use of a filter team is only directed to screening attorney-client information on the cell phone, not to limiting the substantive material reviewed by the Government.

**Lack of Cause to Issue Warrant.** Plaintiffs further believe the Government lacked probable cause to obtain the Warrant, because if the Government had disclosed to the Magistrate Judge critical facts about the Colorado investigation – that there was no damage to the Dominion Voting System, Inc. voting machines in Mesa County, Colorado that purportedly underlie the Government's investigation, and that the Attorney General and those acting under him and at his direction in the Department of Justice had a conflict of interest requiring the Attorney General to appoint a Special Counsel to conduct any investigation of activities related to efforts to obtain evidence of voting irregularities in the 2020 presidential election, *see* 28 C.F.R. § 600.1 – the Warrant would never have been issued.

**Warrant Execution.** The Government's execution of the Warrant also violated Mr. Lindell's constitutional rights. Mr. Lindell was detained and held during a trip in his vehicle that began at 4:00 a.m. and that had not been communicated to anyone except Mr. Lindell's friend who accompanied him, Decl. of Michael Lindell ¶¶ 3, 6 (Doc. 35-2), giving rise to the inference that the Government found Mr. Lindell through unwarranted surveillance of his cell phone or vehicle. (The Government has not explained or responded at all to the assertion that it used unconstitutional means to locate and hold him.) Mr. Lindell was detained against his will by agents of the Federal Bureau of Investigation for 40-45 minutes, unable to leave. *Id*. ¶¶ 4-5, 9-10, 13. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Davis v. Dawson*, 33 F.4th 993, 999 (8th Cir. 2022) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). Mr. Lindell's cell phone was forcibly seized by warrant rather than the appropriate process of serving him with a subpoena that should have precluded the need for the Warrant – which the Government clearly could have used because it served him with a subpoena at the same time it executed the Warrant. *Id*. ¶ 12. In addition, during the detention, Mr. Lindell was questioned by Government agents for 25-30 minutes without counsel present and without being advised of his *Miranda* rights. Again, a violation of his constitutionally protected rights. Lindell Decl. ¶¶ 9-10.

**First Amendment Violation.** Additionally, it appears the Warrant was executed as part of a systematic effort to intimidate Mr. Lindell and those who share his beliefs and

have associated with him from exercising their First Amendment rights to express

concern about the integrity of our voting system. *See id*. ¶¶ 18-21, 26. Mr. Lindell has the

right to associate freely with individuals who do not want their identities disclosed.

*American for Prosperity Found. v. Bonta,* 141 S. Ct. 2373, 2388 (2021). The

Government may not obtain access to the identities of those people by executing an

overbroad search warrant and seizing all of Mr. Lindell's personal contact information

without regard to whether it is related to the Government's investigation. This is one of

the very real constitutional injuries suffered as a result of taking modern technology

devices like a cell phone and broadly sorting through it. This type of government action

has an enormous chilling effect on our basic freedoms including free speech and

association.

### b.  The Government's Few Responses to the Constitutional Infirmities of Its Actions Are Misplaced.

The Government offers two additional responses to constitutional violations

identified by Plaintiffs. Both of the Government's responses miss the mark.

First, the Government argues that the First Amendment does not prevent criminal

investigations that "arise from good faith enforcement of otherwise valid criminal and

civil laws," because the ordinary "preconditions for a warrant" afford sufficient

protection of First Amendment concerns, Opp. at 26-28, and because a warrant target "if

indicted . . . can protect his rights under the First Amendment," Opp. at 14. The

Government's arguments do not stretch as far as the conclusion the Government attempts

to draw from them.

Plaintiffs showed that the Government's continuing violation of their First and Fourth Amendment rights inflicts immediate and irreparable harm on them. Pl. Mem. at 14. The First Amendment prohibits the Government from obtaining compelled disclosure of information concerning the identities and communications of individuals who associate for the advancement of shared beliefs and who choose to do so anonymously. Pl. Mem. at 3-4, 6, 8, 11, 14 (citing among others *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460-462 (1958) and *American for Prosperity Found.,* 141 S. Ct. at 2388); *see also NAACP v. Button*, 371 U.S. 415, 430-31 (1963). If the execution of a warrant can unconstitutionally chill the exercise of First Amendment rights – as the Government implicitly admits is possible, Opp. at 16, and as is happening here, Pl. Mem. at 8 – then the constitutional harm occurs *when the warrant is executed*. Hypothetical future opportunities to challenge a warrant post-indictment do not remedy a First Amendment harm inflicted now, because a future indictment may never come. *See Roman Cath. Diocese v. Cuomo*, 141 S. Ct 63, 67 (2020) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The ordinary protections of "good faith enforcement" also offer the Government no shelter because Plaintiffs have alleged, and shown reasonable basis for the allegation, that good faith is absent here. Pl. Mem. at 3-4, 8, 12-13; Compl. ¶¶ 38-54, 37, 79.

Under these circumstances, it is not enough for the Government to claim it is merely enforcing the law, for "A showing that a prosecution was brought in retaliation for or to discourage the exercise of constitutional rights" would justify even the extreme relief (not requested here) of an injunction against prosecution "*regardless* of whether

valid convictions conceivably could be obtained." *Lewellen v. Raff*, 843 F.2d 1103, 1109-10 (8th Cir. 1988) (adding emphasis to quotation from *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981)).

The Government's First Amendment arguments show, at most, that an indicted individual, not known for speaking out about matters of public concern, under circumstances not suggestive of Government retaliation for First Amendment activities, must rely on the ordinary working of the criminal process to protect his First Amendment claims. The Government's arguments do not show that an unindicted individual well known for First Amendment activities adverse to the expressed desires of the Government must indefinitely suffer the chilling of his First Amendment rights by the Government's seizure of his property and personal communications, until the Government takes additional action against him.

Second, the Government argues that Mr. Lindell has "a mechanism for raising his arguments in any resulting criminal action," asserting "Plaintiffs have offered no explanation as to why such relief would be inadequate." Opp. 15. Not so. The Government should not be permitted to retain the fruit of an unconstitutional seizure of property from an individual whom it has not charged with any wrongdoing. *In re Grand Jury Proceedings*, 716 F.2d at 502 (reversing district court's denial of motion to return property seized from unindicted target of search warrant, where the warrant was unconstitutional general warrant for lack of particularity). Otherwise, the Constitution does not truly prevent the Government from wrongful acts, so long as the Government claims its wrongful acts are part of a criminal investigation. Where a prosecutor uses the

tools of investigation to unconstitutionally gather information, the prosecutor is properly barred from using that information. *See Xcentric Ventures, L.L.C. v. Smith*, No. C 15-4008-MWB, 2015 U.S. Dist. LEXIS 118143, at *78 (N.D. Iowa Sep. 4, 2015). The inclusion of false statements in a warrant application, or the omission of facts necessary to make a warrant application affidavit not materially misleading, invalidates the warrant, preventing the Government from using the information gathered by the warrant. *Williams v. City of Alexander*, 772 F.3d 1307 (8th Cir. 2014); *Franks v. Delaware*, 438 U.S. 154 (1978). Mr. Lindell is not obligated to wait for a hypothetical future criminal action to vindicate his constitutional rights.

### 2. Plaintiffs Are Suffering Irreparable Injury.

The Government's argument concerning the irreparable injury factor presumes that the Government committed no constitutional violation. Opp. 29-30. The Government does not deny that if Plaintiffs' constitutional rights were violated, this factor weighs in favor of Plaintiffs. *Id*.

### 3. The Balance of Equities and the Public Interest Favor Plaintiffs.

The Government's argument concerning the balance of equities and public interest factors presumes that it committed no constitutional violation. Opp. 30-31. The Government does not deny that if Plaintiffs' constitutional rights were violated, these factors weigh in favor of Plaintiffs. *Id*. The Government also relies on the wrongful assertion that Plaintiffs seek to "delay the government's investigation for an indefinite period." Opp. 31. Plaintiffs do not ask the Court to delay any investigation. They simply ask that the investigation be conducted in compliance with constitutional requirements,

which means that the Government should be prevented from rummaging through Mr.

Lindell's personal, private, and confidential data which are unrelated to any investigation.

This can certainly be accomplished. Techniques to separate his data without infringing

his constitutional rights are available.

### C. There Are Clearly Established Exceptions to the Rule of Non-Interference with Criminal Proceedings

Even if the injunctive relief sought by Plaintiffs is deemed to constitute

interference with the Government's ongoing criminal investigation, two exceptions to the

rule prohibiting interference with a criminal proceeding have been recognized by the

Eighth Circuit. The first exception is announced in *Lewellen v. Raff*, 843 F.2d 1103 (8th

Cir. 1988): "A showing that a prosecution was brought in retaliation for or to discourage

the exercise of constitutional rights 'will justify an injunction regardless of whether valid

convictions conceivably could be obtained.'" *Id.* at 1109-10. Plaintiffs addressed this

exception in their opening memorandum. Pl. Mem. 3-4. The Complaint alleges facts

supporting the application of this exception in paragraphs 43-54. The second exception

was reaffirmed recently in *Z. J. by and through Jones v. Kansas City Bd. of Police

Commrs.*, 931 F.3d 672 (8th Cir. 2019): "A warrant based upon an affidavit containing

'deliberate falsehood' or 'reckless disregard for the truth'—including, as alleged here,

material omissions of fact—violates the Fourth Amendment." *Id.* at 686 (quoting *Franks

v. Delaware*, 438 U.S. 154, 171 (1978)). This second exception was discussed in

Plaintiffs' opening memorandum. Pl. Mem. 12-13. Based upon the allegations in

paragraphs 33, 38-40, 47-54, Plaintiffs have requested access to the Warrant application.

### D.  Abstention Is Not Applicable to Plaintiffs' Claims.

The Government argues that courts of equity "do not ordinarily restrain criminal prosecutions," Opp. at 11, and that *Younger v. Harris*, 401 U.S. 37 (1971) and its extension to federal prosecutions in *Deaver v. United States*, 483 U.S. 1301 (1987) (Rehnquist, C.J., in chambers), foreclose Plaintiffs' claims. Opp. 12-14. *Younger* and *Deaver* do not apply here, for several reasons.

First, the Fourth Amendment confers "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Plaintiffs have the protection of that independent right without regard to whether any criminal investigation or prosecution is ongoing. It is plain that the Government could not, without a warrant, empty the contents of Mr. Lindell's home into a truck, including attorney-client communications, and then citing *Younger/Deaver* refuse to return those possessions to Mr. Lindell merely because a criminal investigation was ongoing. Mr. Lindell could seek an immediate remedy for the Government's unconstitutional general seizure. *Younger/Deaver* do not bar *all* legal actions to obtain the return of property during the pendency of a criminal investigation. As in *In re Grand Jury Proceedings*, 716 F.2d at 502, an uncharged target of a seizure by the Government may challenge the seizure in federal court and obtain relief if the seizure was illegal. The operative question here is, on which side of the line do Mr. Lindell's circumstances fall?

Second, Plaintiffs have not asked for an injunction against the furtherance of a criminal prosecution, so *Younger* and *Harris* are of no significance. Where the principles underlying *Younger* are not present, its rule does not bar an action seeking injunctive

relief. "The principle underlying *Younger* . . . is that state courts are fully competent to adjudicate constitutional claims, and therefore a federal court should, in all but the most exceptional circumstances, refuse to interfere with an ongoing state criminal proceeding. In the absence of such a proceeding, however, as we recognized in *Steffel,* a plaintiff may challenge the constitutionality of the state statute in federal court, assuming he can satisfy the requirements for federal jurisdiction." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930 (1975). *Cf. Xcentric Ventures*, No. C 15-4008-MWB, 2015 U.S. Dist. LEXIS 118143, at *71-73 (rejecting *Younger* argument because "the requested injunction would not prohibit the commencement and prosecution of state criminal charges by anyone other than Smith"); *Lambert v. Polk Cty.*, 723 F. Supp. 128, 135 (S.D. Iowa 1989) (granting injunction ordering prosecutor to return copy of video to person from whom it was seized, because "[t]he preliminary injunction sought by plaintiffs and granted by this court does not in any way stay or enjoin the criminal proceedings pending in state court against McKenzie, nor does the preliminary injunction require the County Attorney or the defense or the state court to do or refrain from doing anything whatsoever in the course of conducting the state criminal proceedings. There simply is no federal court interference whatsoever with the state criminal proceedings."). The Government may pursue its investigation after returning Mr. Lindell's cell phone and making right its unconstitutional seizure.

Third, the exceptions to *Younger* apply here. Even a full-fledged *prosecution* may be enjoined by a federal court if it is initiated in bad faith, to harass the defendant, in retaliation for or to discourage the exercise of constitutional rights. *Lewellen*, 843 F.2d at

1109-10. Such a prosecution may be enjoined "*regardless* of whether valid convictions conceivably could be obtained." *Id*. (adding emphasis to quotation from *Fitzgerald*, 636 F.2d at 945). Exceptions to *Younger* exist where irreparable injury is "both great and immediate," where the government is "flagrantly and patently violative of express constitutional prohibitions," or where there is a showing of "bad faith, harassment, or . . . other unusual circumstance that would call for equitable relief." *Younger*, 401 U.S. at 46, 53-54.

Here, those features of flagrant violation of constitutional provisions, bad faith, harassment, and seeking to discourage the exercise of constitutional rights are all present, and Plaintiffs do not even seek to enjoin any prosecution. Mr. Lindell simply wants his phone back and the Government not to review his private information. *See also Entergy Ark., Inc. v. Nebraska*, 210 F.3d 887, 899 (8th Cir. 2000) (enjoining administrative proceeding notwithstanding *Younger* because "the deference owed such proceedings does not apply if they are used to harass or discourage the exercise of a federal right"); *Lambert*, 723 F. Supp. at 134-35 ("Government cannot unlawfully seize property of a citizen in violation of his basic constitutional rights and then continue the violation by not returning the property to him under some theory that they are bound to keep the content of that property secret. . . . The restraints the defendants rely on are properly applicable to evidentiary matters lawfully in the possession of defendants, but they certainly do not override the rights secured to Lambert by the supreme law of the land, the United States Constitution.").

"[W]hile the general rule under the Fourth Amendment is that any and all contraband, instrumentalities, and evidence of crimes may be seized on probable cause . . . it is otherwise when materials presumptively protected by the First Amendment are involved." *Demuth v. Fletcher*, No. 08-5093 (JRT/LIB), 2011 U.S. Dist. LEXIS 34638, at *36-37 (D. Minn. Mar. 31, 2011) (citing *Ft. Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 63 (1989)). "[I]n order to demonstrate a First Amendment violation, a plaintiff must show that defendants attempted to deter or chill plaintiffs' speech and such deterrence was a substantial or motivating factor in defendants' conduct." *Id*.

The Government's arguments citing *Younger/Deaver* to avoid immediate accountability for its wrongful actions toward Plaintiffs are without merit.

**E. Plaintiffs' Rule 41(g) Motion Is Appropriate for Pre-Indictment Recovery of Property Seized.**

The Advisory Committee Notes to Fed. R. Crim. P. 41 "appear to contemplate the possibility that, in certain circumstances, 'equitable considerations might justify an order requiring the government to return or destroy all copies of records that it has seized.' *Id.* In other words, while the rule's post-amendment language does not mention pre-indictment suppression, the Advisory Committee Notes seem to imply that the Rule 41(g) may still operate as a functional equivalent of a motion to suppress prior to indictment." *Bennett v. United States*, No. 12-61499-CIV-ROSENBAUM, 2013 U.S. Dist. LEXIS 102771, at *31-33 (S.D. Fla. July 23, 2013) (citing *In re Grand Jury*, 635 F.3d 101, 105 (3rd Cir. 2011); *In re Search of Law Office, Residence, and Storage Unit*, 341 F.3d 404, 413 (5th Cir. 2003); *In re Warrant & Records Seized from 3273 Hubbard*,

961 F.2d 1241, 1244 (6th Cir. 1992); *Ramsden v. United States*, 2 F.3d 322, 327 n. 4 (9th

Cir. 1993)). Plaintiffs' Motion properly seeks the return of Plaintiffs' property under Rule

41 as a result of the Government's violation of Mr. Lindell's constitutional rights.

The Government agrees that, because Plaintiffs have not been charged with any

crime, Plaintiffs' motion for the return of seized property is "more properly considered a

suit in equity rather than one under the Rules of Criminal Procedure." Opp. at 5; *see*

*United States v. Comprehensive Drug Testing, Inc.,* 621 F.3d 1162, 1172 (9th Cir. 2010)

(*en banc*); *Black Hills Inst. for Geological Research v. U.S. Dep't of Justice,* 967 F.2d

1237, 1239 (1992); *Wilansky v. United States*, 326 F.Supp.3d 784, 790 (2016). Plaintiffs'

motion for preliminary relief, including the request for return of the cell phone in that

motion, is "an independent cause of action" based on this Court's general equitable

jurisdiction and not on Rule 41(g). *Black Hills Inst.*, 967 F.2d at 1239. Plaintiffs

appropriately briefed their motion in terms of the equitable factors appropriate for

requests for injunctive relief. Mem. at 5-13, 14-16.

The Government argues that the request is governed by four factors stated in

*Matter of Search of 4801 Fyler Ave.*, 879 F.2d 385, 389 (8th Cir. 1989). Opp. 5. These

four factors weigh in favor of granting the relief Plaintiffs seek:

**(1) Whether the seizure involved a callous disregard for constitutional rights.**
As shown above, the Government's seizure violated Plaintiffs' constitutional
rights in numerous flagrant ways.

**(2) Whether the party seeking return would suffer irreparable injury by a**
**failure to return the property.**  The continuing denial of Plaintiffs' First

Amendment rights by the Government holding Mr. Lindell's cell phone constitutes continuous irreparable injury. *Roman Cath. Diocese*, 141 S. Ct at 67 ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The Government's continuing ability to review Mr. Lindell's First Amendment associations and his attorney-client privileged communications constitutes irreparable injury. In *Xcentric Ventures*, No. C 15-4008-MWB, 2015 U.S. Dist. LEXIS 118143, the court held that "continued receipt, review and disclosure" of "privileged communications and confidential financial information" by the government "would likely cause harm that could not be cured," in granting a preliminary injunction that prohibited the defendant from reviewing or disclosing materials he obtained as county attorney through investigative subpoenas. *Id*. at *68-69. In *Lambert*, 723 F. Supp. at 133, the court held that the threat of irreparable harm existed where the Government had seized a videotape that the plaintiff sought to get back immediately.

**(3) Whether the party seeking return has an individual interest in and need for the property.** Plaintiffs have an individual interest in the seized cell phone because they own it. They need the cell phone because it contains information not included in the last backup version of it that was accessible to Mr. Lindell after the seizure, and because they do not wish the Government to illegally possess their private information. The Government admits the backup was not made the same day as the phone was seized. Opp. at 8.

**(4) Whether the party has an adequate remedy at law.** The Government argues that a "post-indictment motion to suppress" is the appropriate remedy for Plaintiffs, Opp. at 8, but an indictment is purely hypothetical at this point. Further, while a post-indictment motion to suppress might provide an adequate remedy at law in "most" situations, Opp. at 8; *see Pieper v. United States*, 604 F.2d 1131, 1134 (8th Cir. 1979) (discussing *Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975)), here First and Fourth Amendment considerations require a different outcome. "Where, as here, the records have merely been seized and there is no pending criminal action, the deterrent policies underlying the exclusionary rule may not be as significant as the interest of the court in securing compliance with constitutional procedures by law enforcement agents." *Richey*, 515 F.2d at 1245 n.11. This case presents the appropriate circumstances for the pre-indictment return of property wrongfully seized by the Government. *Bennett*, 2013 U.S. Dist. LEXIS 102771, at *31-32.

### III.
### CONCLUSION

The Court should enter an injunction requiring the Government to return Mr. Lindell's cell phone to him immediately and refrain from looking at or using any information taken from his cell phone – no more and no less.

Dated: October 13, 2022

**PARKER DANIELS KIBORT LLC**

By */s/ Andrew D. Parker*
    Andrew D. Parker (MN Bar No. 195042)
    888 Colwell Building
    123 N. Third Street
    Minneapolis, MN 55401
    Telephone: (612) 355-4100
    Facsimile: (612) 355-4101
    parker@parkerdk.com

*Counsel for Michael J. Lindell and My Pillow, Inc.*

**OLSEN LAW, P.C.**

By */s/ Kurt Olsen*
    Kurt Olsen (D.C. Bar No. 445279)*
    1250 Connecticut Ave., NW, Suite 700
    Washington, DC 20036
    Telephone: (202) 408-7025
    ko@olsenlawpc.com

**to be admitted pro hac vice*

*Counsel for Michael J. Lindell and My Pillow, Inc.*

**MCSWEENEY, CYNKAR & KACHOUROFF, PLLC**

By */s/ Patrick M. McSweeney*
    Patrick M. McSweeney[%]
    3358 John Tree Hill Road
    Powhatan, VA 23139
    Telephone: (804) 937-0895
    patrick@mck-lawyers.com

[%] *admitted Pro Hac Vice*

*Counsel for Michael J. Lindell*

**ALAN DERSHOWITZ, ESQ.**
Alan Dershowitz (MA Bar No. 121200)[%]
1575 Massachusetts Avenue
Cambridge, MA 02138

*[%] admitted Pro Hac Vice*

*Of Counsel for Plaintiff Michael J. Lindell*