# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

MICHAEL J. LINDELL, *et al*.,

        Plaintiffs,

v.

UNITED STATES OF AMERICA, *et al.*,

        Defendants.

Case No. 22-CV-2290 (ECT/ECW)

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO OBTAIN ACCESS TO WARRANT APPLICATION MATERIALS

The government hereby responds to the motion by Plaintiffs Michael J. Lindell and MyPillow Inc. seeking an order to compel Defendants to produce copies of sealed materials filed in connection with the application for a search warrant for Plaintiffs' cell phone (the "Search Warrant Materials"). ECF No. 36, Pls.' Mot. to Obtain Access to Warrant Appl. Materials (the "Motion"); ECF No. 38, Mem. in Supp. of Mot. to Obtain Access to Warrant Appl. Materials ("Pl. Mem."). Plaintiffs claim they are entitled to view these materials under the First Amendment, the common law right of access to judicial records, the Fourth Amendment, and Federal Rule of Criminal Procedure 41. *See generally* Pl. Mem.

Under the First Amendment and the common law, Plaintiffs' right of access to these records is not absolute, and judicial records may remain sealed if such a restriction serves a compelling government interest—particularly where an underlying federal criminal investigation remains ongoing. Here, disclosure of the Search Warrant Materials would (1)

undermine the compelling law enforcement interests in protecting cooperating witnesses and avoiding the risk associated with providing a roadmap to the government's investigation in a manner highly likely to compromise future investigative steps, and (2) compromise recognized privacy, reputational, and due process interests of uncharged individuals.

Plaintiffs' Fourth Amendment and Rule 41 arguments fail due to more fundamental defects. There is no Fourth Amendment right of access to sealed warrant materials before charges are filed. And Plaintiffs have not made even a minimal threshold showing that they are entitled to access these materials under Rule 41. Plaintiffs' Motion should therefore be denied.

## BACKGROUND

On September 7, 2022, the government obtained a search warrant from United States Magistrate Judge Tony N. Leung, authorizing the search of Mr. Lindell for his cell phone, as well as the seizure of his cell phone and records constituting fruits, evidence, or instrumentalities of certain enumerated offenses. *See* Case No. 22-MJ-742 (TNL) (D. Minn.), Search Warrant.[1] On September 13, 2022, the government executed that search warrant on Mr. Lindell in the District of Minnesota. *See id.*, Search Warrant Return. Later that evening, Mr. Lindell gave an interview on his television network describing federal law enforcement agents' execution of the search warrant.

Plaintiffs then filed a civil suit against the United States alleging, *inter alia*, various

---

[1] In the event that the Court cannot access the search warrant docket, the government is able to provide the relevant documents in an *ex parte* filing.

constitutional violations in connection with the warrant and its execution. *See* ECF No. 1 (Complaint). On September 21, 2022, Plaintiffs sought a temporary restraining order. ECF No. 9. On September 22, 2022, the motion was denied. ECF No. 14. Plaintiffs subsequently served their complaint and converted the motion for a temporary restraining order to one for a preliminary injunction. ECF Nos. 21-23, 33. On September 23, 2022, the Court set a hearing on the preliminary injunction motion for October 19, 2022. ECF No. 25.

On October 4, 2022—aware for almost two weeks that the preliminary injunction hearing was approaching—Plaintiffs filed the instant Motion to "inspect and copy all materials submitted to the magistrate judge in support of the Warrant application[.]" Pl. Mem. at 9. Plaintiffs also sought expedited briefing because they purportedly needed the Search Warrant Materials in time for the preliminary injunction hearing. ECF No. 42. U.S. Magistrate Judge Elizabeth Cowan Wright rejected Plaintiffs' request for expedited briefing on the instant Motion in part because Plaintiffs failed to "explain[] why they did not seek the Search Warrant materials when they filed their TRO Motion on September 21." ECF No. 48 at 6-7. Judge Wright consolidated the hearing on the instant Motion with the hearing on the preliminary injunction—both are now set for October 19, 2022, at 10:00 a.m. before U.S. District Judge Eric Tostrud. ECF No. 48 at 8.[2]

---

[2] Separately, on September 28, 2022, the *Minnesota Reformer* and reporter Tony Webster (the "Media Intervenors") intervened and filed a motion seeking the public unsealing of essentially the same records sought by Plaintiffs here. *See* Case No. 22-MJ-742, ECF No. 7, Media Intervenors' Mem. in Supp. of Mot. to Unseal at 2. The Media Intervenors asserted an entitlement to these materials under the First Amendment, *id.* at 5-9, as well as under the common law right of access, *id.* at 10-13. The government responded to that motion and a hearing is set for October 18, 2022, before Judge Leung. Case No. 22-MJ-

**ARGUMENT**

Neither the First Amendment nor the common law right of access entitle Plaintiffs to obtain the Search Warrant Materials at this time. "The first amendment right of public access is not absolute; it is a qualified right[,]" and it may be overcome if "a restriction of" the right "is necessitated by a compelling government interest" and narrowly tailored to that interest. *In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988) (*Gunn I*) (internal quotation marks and citations omitted). Here, non-disclosure of the Search Warrant Materials "is necessitated by a compelling government interest—the on-going investigation." *Id.* As explained in more detail below, disclosure of these records would severely compromise the government's ongoing investigation, and it would also harm the recognized privacy, reputational, and due process interests of various individuals. Similarly, the common law right of access "is not absolute," as it requires balancing the public's interest in a record "against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *IDT Corp. v. eBay*, 709 F.3d 1220, 1222-23 (8th Cir. 2013). Given the interests at stake, the common law right of access affords no greater right than the First Amendment in this context and therefore cannot provide a right to the Search Warrant Materials. *See, e.g.*, *Webster Groves School Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1375 (8th Cir. 1990) ("[O]ur decision must be

---

742, ECF Nos. 6, 14. Although Plaintiffs' motion and the Media Intervenors' motion raise some overlapping legal issues, significantly, Plaintiffs' motion does not seek *public* unsealing of the Search Warrant Materials. Pl. Mem. at 2 ("It may be that the Warrant application materials need not be made public at this time, but Plaintiffs have a right to see the materials used to convince the Court to issue the Warrant.").

the same whether the case is governed by a First Amendment qualified right of access or a common law right of access.").

Plaintiffs fare no better under the Fourth Amendment or Federal Rule of Criminal Procedure 41. The consensus among federal courts is that there is no right of access to search warrant materials under the Fourth Amendment before charges are filed, and Plaintiffs have not alleged facts sufficient to trigger a right of access to the Search Warrant Materials under Rule 41(g). Even if this Court found such pre-indictment rights to exist, the nature of this ongoing criminal investigation—as well as the privacy, reputational, and due process interests of those referenced in the Search Warrant Materials—are compelling government interests that justify non-disclosure here.[3]

## I.      The First Amendment Does Not Entitle Movants to Search Warrant Materials During an Active Federal Criminal Investigation

The proceeding for issuing a search warrant is "necessarily *ex parte*, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence." *Franks v. Delaware*, 438 U.S. 154, 169 (1978). But the public enjoys a qualified First Amendment right of access to certain criminal proceedings, *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-13 (1986), and the Eighth Circuit has held

---

[3] The government is mindful that this Court may lack complete familiarity with the highly sensitive contents of some of the relevant documents and the specific harms that would result from their disclosure (given that the warrant was approved by Judge Leung). If the Court would prefer that the government file a sealed *ex parte* supplement that addresses with greater specificity the contents of the affidavit and the harms that would accompany disclosure, the government is prepared to do so. *See Flynt v. Lombardi*, 885 F.3d 508, 513-14 (8th Cir. 2018) (sanctioning government's *ex parte* filing in support of continued sealing).

that this qualified right "extend[s] to the documents filed in support of search warrant applications" after the search warrant has been executed. *See Gunn I*, 855 F.2d at 573.[4] Recognition of this right, however, "'does not mean that the papers must automatically be disclosed.'" *Gunn I*, 855 F.2d at 574 (quoting *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). Search warrant documents may remain sealed if "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to that interest." *Id.* at 574 (internal quotation marks and citation omitted). There must be a "compelling government interest" in sealing and the court must explain, with specific findings, why "sealing was necessary." *Id.* The district court can "even file its statement of reasons and specific findings under seal." *Id.*[5]

Here, the government has a compelling interest in preventing the disclosure of the Search Warrant Materials during an ongoing federal criminal investigation, both to protect the investigation and to protect the reputational, privacy, and due process interests of uncharged individuals associated with that investigation.

A.   Disclosure of the Search Warrant Materials Would Harm the Government's Ongoing Federal Criminal Investigation

The Search Warrant Materials here should not be disclosed—to Plaintiffs or

---

[4] Not all circuits recognize a First Amendment right of access to search warrant affidavits. *See, e.g.*, *In re Baltimore Sun Co.*, 886 F.2d 60, 62 (4th Cir. 1989) (no First Amendment right of access to search warrant affidavit; common law right of access only); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1211, 1213-19 (9th Cir. 1989) (holding that "members of the public have no right of access"—under the First Amendment or the common law— "to search warrant materials while a pre-indictment investigation is under way").

[5] Courts may also review materials *in camera* to assess whether sealing would be appropriate. *See Flynt*, 885 F.3d at 513-14; *IDT*, 709 F.3d at 1223.

otherwise—during the pendency of the underlying federal criminal investigation. The Eighth Circuit has recognized that the existence of an ongoing federal criminal investigation that has not resulted in any federal indictment strongly tips the balance in favor of non-disclosure of search warrant materials. *See Gunn I*, 855 F.2d at 574 ("The government has demonstrated that restricting public access to these documents is necessitated by a compelling government interest—the on-going investigation."); *see also Certain Interested Individuals, John Does I-V, Who Are Emps. of McDonnell Douglas Corp. v. Pulitzer Pub. Co.*, 895 F.2d 460, 466 (8th Cir. 1990) (*Gunn II*) (recognizing that "the absence of an indictment weighs heavily in favor of the privacy interests and non-disclosure"). The leading case in this area is *Gunn I*, which addressed motions to unseal certain search warrant materials related to warrants executed by federal agents at the St. Louis offices of defense contractor McDonnell Douglas, as part of a highly publicized nationwide investigation into procurement fraud. *Gunn I*, 855 F.2d at 570-71. The search warrant, list of items to be seized, and property receipt for one of these warrants were filed publicly, but all documents related to the other warrant were sealed. *Id.* at 571. After a newspaper filed a motion to unseal the affidavits and other warrant materials, certain limited information from the affidavits was unsealed, but the district court denied the motion as to the balance of the material. *Id.*

On appeal, the Eighth Circuit held that the First Amendment provided a qualified right to search warrant materials but concluded that the government had shown the requisite compelling interest to justify continued sealing of the affidavits and other materials. *Id.* at 574-75. The court emphasized that the compelling interest was "the on-going

investigation" and highlighted that the

> documents describe in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved. Many of the specific allegations in the documents are supported by verbatim excerpts of telephone conversations obtained through court-authorized electronic surveillance or information obtained from confidential informants or both. There is a substantial probability that the government's on-going investigation would be severely compromised if the sealed documents were released.

*Id.* at 574. The court also concluded that line-by-line redaction was not practicable because the documents contained references to recorded communications, described individuals other than the subjects of the search warrants, and "reveal[ed] the nature, scope and direction of the government's on-going investigation." *Id.*

As in *Gunn I*, the Search Warrant Materials at issue here relate to an ongoing federal criminal investigation that would be severely harmed by premature disclosure of such materials. The relevant documents (in particular, the search warrant affidavit), like the materials in *Gunn I*, "describe in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific [activities] involved." *Id.* Even a cursory review of the 80-page search warrant affidavit here would demonstrate the factual detail and specificity the government provided in support of the search warrant for Plaintiffs' cell phone. Relatedly, many of the allegations in the affidavit are supported by information obtained from recordings or "obtained from confidential informants." *Id.*; *see also In re Search Warrants in Connection with Investigation of Columbia/HCA Healthcare Corp., in El Paso, Tex.*, 971 F. Supp. 251, 253 (W.D. Tex. 1997) (refusing to unseal search

8

warrant affidavit where doing so could reduce the likelihood of cooperation from various informants). Just as similar "compelling government interests" reinforced the need for non-disclosure in *Gunn I,* 855 F.2d at 574, and the *continued* need for sealing even 18 months after the search warrants' execution in *Gunn II*, 895 F.2d at 467 (described in further detail below), these compelling interests also justify keeping the Search Warrant Materials sealed at this time (less than one month after the execution of the warrant for Mr. Lindell's phone). *See Goff v. Graves*, 362 F.3d 543, 550 (8th Cir. 2004) (sealing justified to preserve prison security and protect confidential informants); *cf. Flynt*, 885 F.3d at 512-13 (sealing important to protect safety of physicians involved in lethal injection protocol).

Line-by-line redaction of the Search Warrant Materials under these circumstances would be practically impossible for the same reasons the *Gunn I* court rejected the possibility of redaction: the Search Warrant Materials contain references throughout to various recordings, to "individuals other than the subjects of the search warrants," and to the "nature, scope and direction of the government's on-going investigation." 855 F.2d at 574.

B.    <u>Disclosure of the Search Warrant Materials Would Harm the Privacy and Reputational Interests of Uncharged Individuals</u>

Particularly given the ongoing nature of the underlying criminal investigation, the strong privacy interests of numerous unindicted individuals also justify non-disclosure of the Search Warrant Materials. The Eighth Circuit has repeatedly recognized that such privacy interests weigh heavily in favor of non-disclosure of search warrant materials during federal investigations. Two years after *Gunn I*, the Eighth Circuit was once again

asked to weigh in on the unsealing of the search warrant materials at issue in that case. *See Gunn II*, 895 F.2d at 461. Nearly 18 months after the execution of the *Gunn I* search warrants, the same district court overseeing the *Gunn I* litigation agreed to unseal the primary search warrant affidavit in support of the McDonnell Douglas office search warrants (with certain names redacted). *Id.* at 461-62. By that time, the government no longer opposed unsealing these materials, even conceding that its "investigatory objectives had been attained in part." *Id.* at 462 (alteration omitted). However, the search warrant subjects (who had not yet been indicted) continued to support sealing and appealed the district court's unsealing order, emphasizing the privacy interests implicated by the description of their wiretapped conversations in the search warrant affidavit. *Id.*

The Eighth Circuit reversed the district court, holding that the affidavit should have been kept under seal primarily because of the pre-indictment status of the investigation. *Id.* at 466-67. The court emphasized that the "procedural posture of the government's criminal investigation must be considered in the balancing process and that the absence of an indictment weighs heavily in favor of the privacy interests and non-disclosure." *Id.* at 466. Although other individuals in the investigation had been indicted, the search warrant affidavit still described in considerable detail the "nature, scope and direction of the government's investigation and the individuals and specific projects involved." *Id.* at 467 (internal quotation marks and citation omitted). The affidavit implicated "some individuals directly in criminal misconduct, others only indirectly," and "[d]isclosure could seriously damage their reputations and careers." *Id.* Ultimately, the court held that the "pre-indictment status of the government's criminal investigation tips the balance decisively in

favor of the privacy interests and against disclosure of even the redacted versions of the search warrant affidavits[.]" *Id.*

Since *Gunn I* and *Gunn II*, the Eighth Circuit has regularly upheld the sealing of documents to protect similar interests. *See, e.g.*, *Flynt*, 885 F.3d at 511-13 (refusing to unseal death penalty litigation documents in order to protect the safety of physicians involved in the execution process); *Goff*, 362 F.3d at 550 (rejecting request to unseal certain records in prisoner litigation to preserve institutional security and protect confidential informants); *Webster Groves*, 898 F.2d at 1375-77 (refusing to unseal civil proceedings involving juvenile delinquency where strong public interest in privacy of juveniles favored sealing, and refusing to redact documents).

As in *Gunn II*, unsealing the Search Warrant Materials would affect the strong privacy interests of individuals who are both "directly" and "indirectly" "implicate[d] . . . in criminal misconduct" by "damag[ing] their reputations and careers." 895 F.2d at 467. The Search Warrant Materials, as suggested by the list of enumerated charges in the search warrant (which include conspiracy), implicate numerous individuals.[6] The privacy and reputational interests of these individuals, many of whom may never be indicted and whose position on dissemination of the Search Warrant Materials is unknown, strongly supports non-disclosure here. For example, although Plaintiffs have sought access to the Search Warrant Materials, they have suggested that their request does not necessarily

---

[6] To the extent that the Court would benefit from more detailed argument about the privacy interests at stake here, the government is prepared to present such argument in a supplemental *ex parte* filing.

encompass unsealing these materials for *others* to see. *See* Pl. Mem. at 2; *see generally In re Appl. of Kansas City Star Co.*, 143 F.R.D. 223, 224 (W.D. Mo. 1992) (declining to unseal portions of search warrant affidavit to protect the defendants' right to a fair trial); *cf. United States v. Webbe*, 791 F.2d 103, 106 (8th Cir. 1986) (rejecting news channel's request for access to wiretap recordings in part because they could adversely impact the defendant's right to a fair trial). And, in any event, Plaintiffs cannot speak for other individuals whose privacy, reputational, and due process interests would be harmed by disclosure.

C.    <u>Plaintiffs Cannot Overcome These Compelling Interests</u>

Keeping the Search Warrant Materials sealed is necessary to protect the compelling interests identified by the government—particularly in view of the ongoing federal investigation—and Plaintiffs' arguments in support of the Motion do not counsel otherwise.

Plaintiffs assert that they must review the affidavit in order to challenge the warrant through a preliminary injunction. Pl. Mem. at 5. But that argument presupposes that their pending motion is proper. It is not. Warrant recipients may not deploy civil litigation to enjoin the federal government's investigation into potential criminal wrongdoing. *See generally* ECF. No. 49, Defs.' Opp'n To Pls.' Mot. For A Prelim. Inj. Plaintiffs will have an opportunity to review and challenge the warrant if and when any criminal proceedings are instituted. *See Matter of Search of 4801 Fyler Ave.*, 879 F.2d 385, 389 (8th Cir. 1989) (movant has adequate remedy to challenge the search through a motion to suppress should criminal proceedings be instituted); *In re Search of Florilli Corp.*, 33 F. Supp. 2d 799, 806 (S.D. Iowa 1998) (same). This is consistent with the Supreme Court's instruction that once the government obtains a valid warrant, "the manner in which [that] warrant is executed is

subject to *later* judicial review as to its reasonableness." *Dalia v. United States*, 441 U.S. 238, 258 (1979) (emphasis added); *see also United States v. Grubbs*, 547 U.S. 90, 99 (2006) ("The Constitution protects property owners . . . by interposing, *ex ante*, the deliberate, impartial judgment of a judicial officer . . . between the citizen and the police and by providing, *ex post*, a right to suppress evidence improperly obtained and a cause of action for damages.") (internal quotation marks and citation omitted). Plaintiffs' attempts to challenge the warrant through civil litigation is misguided and premature.

Plaintiffs' claim that the well-publicized nature of the government's investigation justifies disclosure of the Search Warrant Materials is also without merit. *See* Pl. Mem. at 7-8. It is not the government that has publicized this investigation; it is Mr. Lindell. *See* ECF. No. 49, Defs.' Opp'n To Pls.' Mot. For A Prelim. Inj. And For Return of Property Pursuant to Fed. R. Crim. Pr. 41(g), Ex. 1 (Mr. Lindell's public interview on his television network, Lindell TV, regarding the search warrant). Mr. Lindell's own public statements are insufficient to justify the disclosure of sealed records. And Plaintiffs do not identify any instance when the government has publicly disclosed the nature or scope of its investigation, nor do they offer support for the notion that events disconnected from a warrant itself can justify disclosure of a sealed warrant application. Allegedly executing a search warrant in a public place and then asking Mr. Lindell—in a space away from the general public—"questions concerning a broad spectrum of topics," Pl. Mem. at 8, does not publicize the full scope of an ongoing criminal investigation.

Indeed, the fact that the government has allegedly taken certain overt investigative actions in this matter does not weaken the government's overriding interest in maintaining

the integrity of sensitive documents related to an ongoing criminal investigation. In *Gunn II*, for example, numerous "[o]ther individuals and corporations targeted by [the over 40 search warrants arising from the investigation] ha[d] been indicted" and others had been convicted of related offenses, but the Eighth Circuit nevertheless required continued sealing of the primary search warrant affidavit at issue in the case. 895 F.2d at 467. Similarly, in *Gunn I*, the court ordered continued sealing notwithstanding the public release of other search warrant affidavits from the same investigation. 855 F.2d at 575. And the government's interest in continued sealing certainly is not undermined by actions that Plaintiffs might choose to take of their own will.

To the extent Plaintiffs assert that the public interest in the federal investigation here supports unsealing the Search Warrant Materials, that interest is no greater than the "intense public interest" occasioned by, and "considerable news media attention" paid to, the nationwide procurement fraud investigation in *Gunn I*, 855 F.2d at 570; *id.* at 576 (Heaney, J., concurring in part and dissenting in part) (noting "that the defense contract and procurement scandal in this country represents a public concern of great immediacy and magnitude"); *see also United States v. McDougal*, 103 F.3d 651, 652, 659 (8th Cir. 1996) (refusing to unseal President Bill Clinton's video deposition in criminal trial arising out of independent counsel investigation); *Webbe*, 791 F.2d at 105, 107 (rejecting news channel's request for access to wiretap recordings in voter fraud case, despite the strong "public interest in overseeing the integrity of . . . public institutions").

The government has, accordingly, established a compelling interest that justifies

14

continued sealing of the Search Warrant Materials at this time.[7]

## II.   The Common Law Right of Access Does Not Entitle Movants to the Search Warrant Materials

Plaintiffs mention the common law right of access to judicial records only in passing in their Memorandum, *see* Pl. Mem. at 3, and they do not mention it at all in their Motion. In any event, Plaintiffs cannot circumvent the above limitations on the First Amendment right of access by way of the common law right of access. "There is a common-law right of access to judicial records," but that "'right . . . is not absolute.'" *IDT*, 709 F.3d at 1222 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978)). The Eighth Circuit has expressly "decline[d] to adopt" a strong presumption in favor of the common law right of access. *Webbe*, 791 F.2d at 106; *see also McDougal*, 103 F.3d at 657-58 (same). The decision about public access requires the Court to balance the public's interest in the material "against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *IDT*, 709 F.3d at 1223. "[T]he decision as to access is one best left to the sound discretion of the trial court." *Nixon*, 435 U.S. at 599.

Although premised on separate legal theories, courts have recognized that in many circumstances, a decision to unseal judicial records "must be the same whether the case is governed by a First Amendment qualified right of access or a common law right of access."

---

[7] Plaintiffs also baselessly allege that the sealing of the Search Warrant Materials arose out of a violation of the Local Rules governing sealed documents in criminal cases. The Court presumably has access to the full docket sheet and complete set of Search Warrant Materials, and is able to see for itself the motions and orders on that docket. There was no violation. Even if there had been, Plaintiffs do not explain how an alleged procedural deviation from the Local Rules in sealing the Search Warrant Materials would grant them access to those materials.

15

*Webster Groves*, 898 F.2d at 1375; *see also Gunn I*, 855 F.2d at 575 (Bowman, J., concurring) (holding that "[t]he common law right of access to judicial records . . . would yield in this case precisely the same result that [the court] ha[s] reached by other means," namely the First Amendment right of access).

Here, Plaintiffs are not entitled to the Search Warrant Materials under the common law right of access for essentially the same reasons that they are not entitled to the materials under the First Amendment right of access—the ongoing criminal investigation and the likelihood of harm to the reputational, privacy and due process interests of uncharged individuals. As explained above, disclosure of the Search Warrant Materials at this time risks significantly undermining the government's investigation. *See, e.g.*, *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989) ("[T]he ends of justice would be frustrated, not served, if the public were allowed access to warrant materials in the midst of a preindictment investigation into suspected criminal activity."); *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 430 (4th Cir. 2005) (denying access to search warrant affidavits when "any disclosure of the information there would hamper an investigation," and because of "the preliminary stage of the investigation" and "the impact of the affidavit's release on broader investigations in other districts" (internal quotation marks omitted)); *United States v. Pirk*, 282 F. Supp. 3d 585, 602 (W.D.N.Y. 2017) ("The Government's stated need to maintain confidentiality due to the ongoing nature of its investigation is a legitimate basis to justify maintaining the sealing of significant portions of the search warrant affidavit."). Additionally, disclosure risks harming the reputational and privacy interests of individuals whose conduct is described in the Search Warrant

16

Materials. *See* pp. 9-14, *supra*; *see also United States v. Smith*, 776 F.2d 1104, 1110 (3d Cir. 1985) (explaining that "reputational and privacy interests of third parties might outweigh the strong presumption of public access"); *In re Flower Aviation of Kansas, Inc.*, 789 F. Supp. 366, 368 (D. Kan. 1992) (rejecting unsealing of warrant papers under common law right of access where "an indictment has not been issued in this matter" and "the identities of various persons mentioned in the affidavits should be kept confidential to protect their privacy interests and safety").

**III.   There Is No Fourth Amendment Right of Access to Sealed Warrant Materials Before Charges Are Filed**

"[N]o provision within the Fourth Amendment grants a fundamental right of access to sealed search warrant affidavits before an indictment." *In re EyeCare Physicians of America*, 100 F.3d 514, 517 (7th Cir. 1996); *see also In re Grand Jury Proceedings*, 115 F.3d 1240, 1246 (5th Cir. 1997) (following the *EyeCare* decision in evaluating whether the government displayed a "callous disregard" for a plaintiff's constitutional rights, and characterizing the decision as "sensible"). Indeed, "[t]he Fourth Amendment has no bearing on the question of whether documents related to the issuance of search warrants must be made available for public inspection." *In re Search of Fair Finance*, 692 F.3d 424, 431 (6th Cir. 2012); *accord Al-Dahir v. Northrop Grumman Information Technology*, Case No. 08-CV-563, 2008 WL 4470514, at *6 (E.D. La. Sept. 26, 2008); *In re Search of S&S Custom Cycle Shop*, 372 F. Supp. 2d 1048, 1051-52 (S.D. Ohio 2003). This conclusion is consistent with the plain text of the Fourth Amendment, which says nothing about access to search warrant documents. *See* U.S. Const., amend. IV.

17

No circuit court has held otherwise, and the Eight Circuit has not squarely addressed this question. Plaintiffs cite *United States v. Oliver*, No. 99-4231, 2000 WL 263954, at \*2 (4th Cir. Mar. 9, 2000) (unpublished) to support their argument, but the docket sheet for the underlying criminal prosecution reveals that *Oliver* was addressing access to search warrant materials *after* charges were filed. *See United States v. Oliver*, Case No. 98-CR-00304, ECF No. 10 (E.D. Va. Sept. 25, 1998) (showing that motion to "unseal affidavit" was filed approximately one month after the defendant's initial appearance on a criminal complaint). The relevant quotation from the *Oliver* court confirms that it was describing access to an affidavit *after* charges were filed because it refers to a *defendant*'s qualified entitlement to the document. *See* 2000 WL 263954, at \*2 ("Although a *defendant* is entitled under the Fourth Amendment to examine the affidavit that supports a warrant after the search has been conducted, this right is not absolute." (emphasis added)). The caption of the Fourth Circuit opinion—with the United States as the plaintiff, not "In re Search Warrant" or a similar caption—further confirms that the court was addressing the unsealing of a search warrant affidavit in the context of a charged criminal case.

Without *Oliver*, Plaintiffs are left with an assortment of district court opinions from outside of this circuit, *see* Pl. Memo at 4 n.2, and a single decision from a U.S. Magistrate Judge in this district, *In re Up North Plastics, Inc.*, 940 F. Supp. 229 (D. Minn. 1996) (*Up North Plastics*). The Court should not rely on these cases.

The *Up North Plastics* court found that "a person whose property has been seized pursuant to a search warrant has a right under the warrant clause of the Fourth Amendment to inspect and copy the affidavit upon which the warrant was issued." 940 F. Supp. at 232.

The court reached this conclusion—of constitutional magnitude—relying on a single opinion of the U.S. District Court for the Southern District of Ohio, *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 299 (S.D. Ohio 1995), and an observation that the existence of a Fourth Amendment right to view a search warrant affidavit before charges are filed is "supported by" Rule 41, which provides for the filing of a motion for return of property and the court's receipt of evidence when ruling on that motion. *See* 940 F. Supp. at 232-33. No further analysis was provided.

*Up North Plastics* was wrongly decided and has not been endorsed or adopted by any court in this circuit. The Southern District of Ohio decision that formed a key foundation of the *Up North Plastics* decision has since been rejected as "not persuasive" in a later decision from that same court. *See In re Search of S&S Custom Cycle Shop*, 372 F. Supp. 2d at 1051 ("The better reasoned cases have held that no right to inspect sealed affidavits for search warrants exists *under the Constitution or the Criminal Rules*, prior to the initiation of a criminal proceeding against the movant" (emphasis in original)). The Seventh Circuit called *Up North Plastics* "conclusory at best (with respect to the applicability of the Fourth Amendment) and conspicuous for its lack of analysis." *In re EyeCare Physicians of America*, 100 F.3d at 517. Moreover, the *Up North Plastics* decision received no review from a U.S. District Judge or the Eighth Circuit, and it has not been cited by a single federal court in the Eighth Circuit except in the order on Plaintiffs' request to expedite briefing on the instant Motion in this matter (where the presiding U.S. Magistrate Judge merely noted that Plaintiffs were relying on it). *See* ECF No. 48 at 5.

At best, the cases cited by Plaintiffs (including *Up North Plastics*) reason that a

Fourth Amendment right to be free from unreasonable search and seizure cannot be vindicated unless the right also includes access to the underlying documents supporting the search. *See, e.g.*, *Up North Plastics*, 940 F. Supp. at 232-33; *In re Offices & Storage Areas Utilized by Stephen P. Amato, D.C.*, Case No. 05-MJ-05-B, 2005 U.S. Dist. Lexis 6870, at *11-23 (D. Me. April 14, 2005). That argument misses the key point that *pre-indictment* suppression of evidence is an extraordinary remedy that requires an exercise of a district court's equitable jurisdiction. *See Pieper v. United States*, 604 F.2d 1131, 1133 (8th Cir. 1979) (noting that "equitable jurisdiction to suppress illegally obtained evidence before an indictment . . . is an extraordinary one and is to be exercised with caution and restraint"). An exercise of that equitable jurisdiction requires: (1) a "clear showing of a search and seizure in callous disregard of the Fourth Amendment;" (2) irreparable injury if relief is not granted; and (3) the absence of an "adequate remedy at law." *Id.* If pre-indictment suppression of evidence is an extraordinary remedy, it follows that pre-indictment access to the documents necessary to argue for such suppression would also be extraordinary.

*Up North Plastics* and its brethren appear to ignore this principle, and instead assume that pre-indictment suppression of evidence—and the associated preceding litigation and document disclosures— are routine. These cases' failure to grapple with the extraordinary nature of pre-indictment suppression is a key indicator of their flawed reasoning.

This Court should accordingly reject Plaintiffs' invitation to find a Fourth Amendment right to access search warrant materials before charges are filed (a right no circuit court has ever embraced), and instead should join the Fifth, Sixth, and Seventh

Circuits in concluding that no such right exists.

## IV.   Plaintiffs Have Not Made a Sufficient Showing to Trigger a Right of Access to the Search Warrant Materials Under Rule 41

Neither do plaintiffs have an entitlement to the Search Warrant Materials under Federal Rule of Criminal Procedure 41. "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). "The court must receive evidence on any factual issue necessary to decide the motion." *Id.* Plaintiffs rely solely on *Up North Plastics* to support their argument that Rule 41(g) entitles them to view the sealed Search Warrant Materials because, they claim, it is impossible for them to seek return of property under Rule 41(g) if they cannot scrutinize the affidavit that led to the issuance of the search warrant. Pl. Mem. at 4-5.[8]

As stated in Defendants' response to Plaintiffs' motion for a preliminary injunction, a motion for the return of property before charges are filed "is more properly considered a suit in equity rather than one under the Rules of Criminal Procedure," and "[f]ederal courts have recognized an independent cause of action for return of property based on the general equitable jurisdiction of the federal courts." *Black Hills Inst. of Geological Rsch. v. U.S. Dep't of Just.*, 967 F.2d 1237, 1239 (8th Cir. 1992). The Eighth Circuit has emphasized that "[t]his remedy should be exercised cautiously and subject to general equitable principles." *Id.*; Fed. R. Crim. P. 41, Advisory Committee's Notes (1989 amend.) ("If the United States has a need for the property in an investigation or prosecution, its retention of the property

---

[8] Plaintiffs' Rule 41 argument appears to be confined to Rule 41(g) based on the context for the language they cite from *Up North Plastics* and their reference to their motion for return of property. Pl. Mem. at 4-5.

generally is reasonable."). That is because "[t]hese remedies are extraordinary, and they must be used with restraint." *Matter of Search of 4801 Fyler Ave.*, 879 F.2d at 389. Courts deciding Rule 41(g) motions ordinarily consider: (1) whether the seizure involved a callous disregard for constitutional rights; (2) whether the party seeking return would suffer irreparable injury by a failure to return the property; (3) whether the party seeking return has an individual interest in and need for the property; and (4) whether the party has an adequate remedy at law. *Black Hills*, 967 F.2d at 1239-40.

Plaintiffs' Motion and accompanying memorandum provide no indication as to why they believe these factors are satisfied here, or why review of the Search Warrant Materials would bolster their arguments. Rather, they are asking the Court to permit them to see the Search Warrant Materials so that they can then determine whether they have any viable arguments under Rule 41(g). Pl. Mem. at 4-5. In this same vein, it is notable that they sought a temporary restraining order well before filing this Motion to obtain access to the Search Warrant Materials. *See* ECF No. 48, Order Denying Expedited Briefing on the Motion, at 6-7 ("Nor have Plaintiffs explained why they did not seek the Search Warrant materials when they filed their TRO Motion on September 21[, 2022]. It was not until two weeks later, two days before Defendants' response to the TRO Motion is due, that Plaintiffs filed [the instant Motion]").

This type of speculation is insufficient to trigger extraordinary equitable relief, as it would entitle any search warrant target to file a bare-bones motion for return of property, and then force the government to consume significant litigation resources in protecting sensitive documents from public disclosure. The Court should not endorse Plaintiffs' effort

to put the cart before the horse, particularly where they were on notice of the deficiencies in their Rule 41 analysis two weeks before filing the instant Motion. ECF No. 14 at 3-5.

Moreover, the Court is in a position to review search warrant documents without also granting such access to Plaintiffs. *See In re Flower Aviation*, 789 F. Supp. at 369 (rejecting movant's argument that it should be able to access search warrant materials to seek return of property because the court was able to review the warrant materials *in camera*). And to the extent that Plaintiffs complain about the manner in which the warrant was executed, access to the warrant documents themselves would be of no help to them. While the Court "must receive evidence on any factual issue necessary to decide the motion," Fed. R. Crim. P. 41(g), Rule 41 does not require that Plaintiffs be given access to the Search Warrant Materials.

Even if the Court finds that Plaintiffs have a right to access the Search Warrant Materials under the Fourth Amendment or Rule 41, Plaintiffs concede that any purported right to view the Search Warrant Materials may be overcome by a compelling government interest. Pl. Mem. at 6. Indeed, although the *Up North Plastics* court premised its decision on the Fourth Amendment, it adopted the same standards set forth in the First Amendment context and specifically noted that any right to examine an affidavit "must yield" to the government's "compelling need to keep the contents of the affidavit secret for some reasonable period of time." *Up North Plastics*, 940 F. Supp. at 233.

In sum, Plaintiffs' qualified right of access to search warrant materials is outweighed by the government's compelling interest in preventing the disclosure of such materials during an ongoing federal criminal investigation, both to protect the integrity of the

investigation and to protect the reputational and privacy interests of uncharged individuals associated with that investigation.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.


Dated: October 14, 2022                              Respectfully submitted,


ANDREW M. LUGER                                COREY R. AMUNDSON
United States Attorney                          Chief, Public Integrity Section
                                                U.S. Department of Justice


By: */s/ Craig R. Baune*                         By: */s/ Jonathan E. Jacobson*
Craig R. Baune                                  Jonathan E. Jacobson
Assistant U.S. Attorney                          Trial Attorney
Attorney ID No. 331727                          Public Integrity Section
600 United States Courthouse                     U.S. Department of Justice
300 South Fourth Street                          Ill. Bar No. 6317721
Minneapolis, MN 55415                           1301 New York Ave. NW, 10th Fl.
Phone:  612-664-5600                            Washington, DC 20005
Email: Craig.baune@usdoj.gov                     Phone: (202) 514-1412
                                                Email: jonathan.jacobson@usdoj.gov


                                                JOHN T. LYNCH
                                                Chief, Computer Crime and
                                                Intellectual Property Section
                                                U.S. Department of Justice


                                                By: */s/ Frank Lin*
                                                Frank Lin
                                                Senior Counsel
                                                Computer Crime and Intellectual
                                                Property Section
                                                U.S. Department of Justice
                                                Wa. Bar No. 48617
                                                950 Pennsylvania Ave. NW, Ste. 600
                                                Washington, DC 20530
                                                Phone: (202) 514-1026
                                                Email: frank.lin@usdoj.gov