# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3510
_____

Michael J. Lindell; MyPillow, Inc.

*Plaintiffs - Appellants*

v.

United States of America; Merrick B. Garland, in his official capacity as Attorney General of the United States; United States Attorney, for the District of Minnesota; Christopher Wray, in his official capacity as Director of the Federal Bureau of Investigation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 14, 2023
Filed: September 22, 2023

_____

Before LOKEN, COLLOTON, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

     MyPillow, Inc. and Chief Executive Officer Michael Lindell (collectively, "Lindell") appeal the district court's denial of their motions for a preliminary injunction and for the return of property—Lindell's cell phone that was seized by federal agents on September 13, 2022. The basis of Lindell's action arises from an

ongoing federal investigation into the individuals responsible for publishing forensic images of election software used in the 2020 election in Mesa County, Colorado. No charges have been filed. He argues on appeal that the federal investigation violates his First Amendment rights of freedom of speech, freedom of association, freedom of the press, and the right to petition for the redress of grievances. He also contends the search warrant for his phone violates the Fourth Amendment's prohibition against general warrants. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.     BACKGROUND

Lindell utilizes various media platforms to advance his theories of election fraud occurring during the 2020 presidential election. More specifically, in spring 2021, the Colorado Secretary of State directed local election officials to install a software upgrade on election machine servers. Lindell believes these upgrades unlawfully deleted unauthorized software used in the 2020 and 2021 elections in Mesa County. See 52 U.S.C. § 20701 (mandating the preservation of election data for 22 months after an election). Before and after the upgrade, a forensic image was made of the election management system servers. The forensic images were made public without authorization, which caused the Colorado Secretary of State to initiate an investigation into the individuals responsible for the security breach.

Meanwhile, the federal government commenced its own investigation into the security breach. According to Lindell's complaint, the investigation thus far has included residential searches by Federal Bureau of Investigation ("FBI") agents of several individuals suspected of making and publishing the forensic images. Another facet of the investigation—the subject of this litigation—involved FBI agents serving Lindell with a search and seizure warrant for his cell phone. Lindell's 18-page complaint brought against the United States, the United States Attorney General, the United States Attorney for the District of Minnesota, and the Director of the FBI challenges the issuance and execution of the search warrant for his cell phone as violating his constitutional rights. For relief, Lindell seeks: (1) a

declaration that the defendants' actions violated his First, Fourth, and Fifth Amendment rights; (2) a determination that the warrant is invalid; (3) an order requiring the return of his cell phone pursuant to Federal Rule of Criminal Procedure 41(g) as well as any data seized from it; (4) a temporary restraining order prohibiting the defendants from attempting any access to the data on the cell phone; (5) an order requiring the defendants to immediately provide him with a copy of the affidavit supporting the warrant; and (6) the recovery of attorney's fees, costs, and expenses. One day after filing his complaint (8 days after his phone was seized), Lindell moved for a temporary restraining order seeking the return of his phone and data. After denying Lindell's motion for a temporary restraining order, the district court treated his request as a motion for a preliminary injunction and for the return of property. The government filed its brief in opposition on October 6, 2022. On November 3, 2022, the district court denied injunctive relief and declined to exercise equitable jurisdiction over the motion for return of property.[1] Lindell appeals.

## II. DISCUSSION

We review the district court's denial of a motion for a preliminary injunction under the deferential abuse of discretion standard, with the underlying factual findings examined for clear error and legal conclusions considered *de novo*. H&R Block, Inc. v. Block, Inc., 58 F.4th 939, 946 (8th Cir. 2023). Because pretrial injunctive relief is an extraordinary and an equitable remedy, the party seeking a preliminary injunction bears the burden of establishing the necessity of the remedy. Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 316 (8th Cir. 2009); see Black Hills Inst. of Geological Rsch. v. U.S. Dep't of Just., 967 F.2d 1237, 1239 (8th Cir. 1992) (stating that "a motion prior to the filing of criminal charges is more properly considered a suit in equity rather than one under the Rules of Criminal Procedure").

---

[1] The district court's decision on Lindell's request for a copy of the documents supporting the warrant was not appealed and is not before us.

Lindell's claims are premised on alleged constitutional violations coupled with a Rule 41(g) request for the return of property. In his motion for injunctive relief, Lindell requested the return of his cell phone, the return of data seized by the government from it, and an order precluding the government from accessing or taking other action with respect his cell phone. In his opening brief to us, Lindell requests that we "enter an Order enjoining the investigation, prohibiting any use of the data seized pursuant to the warrant, and requiring the Government to return the seized property to him." The relief requested by Lindell is overbroad.

The Supreme Court has noted that courts, in exercising equitable discretion, "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citation omitted). This Court has repeatedly recognized that the purpose of injunctive relief is to preserve the status quo; it is not to give the movant the ultimate relief he seeks. See McKinney ex rel. N.L.R.B. v. S. Bakeries, LLC, 786 F.3d 1119, 1125 (8th Cir. 2015) (finding the district court abused its discretion in granting a preliminary injunction that did not act to preserve the status quo, but instead improperly accelerated a decision on the ultimate remedy when the ordinary adjudicatory process is likely to be as effective as an order for interim relief); Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co., 997 F.2d 484, 490 (8th Cir. 1993) (reiterating the primary function of a preliminary injunction is to preserve the status quo until the merits and appropriate relief can be determined).

Lindell's motion for injunctive relief is a request for the ultimate relief he seeks. While he has at times attempted to assert otherwise, Lindell's objective in this action is apparent—this litigation is a tactic to, at a minimum, interfere with and, at most, enjoin a criminal investigation and ultimately hamper any potential federal prosecution related to his, or others, involvement in the public disclosure of forensic images of Mesa County's election management servers. Affording such relief is not only contrary to the purpose of a preliminary injunction but would open the door to a deluge of similar litigation by those under criminal investigation. This type of ultimate relief request is fatal to Lindell's preliminary injunction application. See

id.; see also Union Home Mortg. Corp. v. Cromer, 31 F.4th 356, 365 (6th Cir. 2022) (declining to modify an overbroad injunction to rectify the defects); Williams v. Recovery Sch. Dist., 859 F. Supp. 2d 824, 833 (E.D. La. 2012) (dismissing claim for injunctive relief because the request is fatally overbroad and fails to state a claim).

In addition, Lindell cannot meet his burden of showing the exercise of equitable jurisdiction over the return of his seized phone data is warranted. "It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions." Douglas v. City of Jeannette, 319 U.S. 157, 163 (1943). The Eleventh Circuit has described "an exacting test" for determining when the exercise of equitable jurisdiction over suits flowing from the seizure of property is appropriate. Trump v. United States, 54 F.4th 689, 697 (11th Cir. 2022). This test involves consideration of four factors: (1) whether there has been a "callous disregard" for the plaintiff's constitutional rights; (2) the interest in and need for the material that plaintiff has asked to be returned; (3) whether the plaintiff has shown irreparable injury if the property is not returned; and (4) whether an adequate remedy at law exists to redress the plaintiff's grievance. Id. (quoting Richey v. Smith, 515 F.2d 1239, 1243-44 (11th Cir. 1975)); see Black Hills Inst., 967 F.2d at 1239-40 (reciting the same factors when deciding whether to invoke general equitable jurisdiction over 10 tons of dinosaur bones when the government's rationale for the seizure and retention of the "priceless, archeological treasure" was based on an ongoing criminal investigation). The purpose of this test is to strike a balance between unnecessary judicial interference with the executive branch's criminal enforcement authority while affording relief "in rare instances where a gross constitutional violation would otherwise leave the subject of a search without recourse." Trump, 54 F.4th at 697.

Here, a federal magistrate judge determined there was probable cause to seize and search Lindell's cell phone. The warrant explicitly authorized the search of Lindell's person for his cell phone as well as the seizure and search of the phone for records and information constituting "fruits, evidence, or instrumentalities" of three federal offenses—18 U.S.C. § 1028(a)(7) (identity theft); 18 U.S.C. § 1030(a)(5)(A)

(intentional damage to a protected computer); and 18 U.S.C. § 371 (conspiracy to commit identity theft and/or cause intentional damage to a protected computer).

Lindell takes issue with the manner and method of execution of the search warrant—his cell phone was seized from him while in the Hardee's restaurant drive-through lane at 10:30 a.m. while he was on his way home from an out-of-state duck hunting trip. After calling his lawyer, Lindell decided to comply with the warrant and turn over his phone to the agents. Lindell's irritation as to where and how the government took possession of his cell phone does not give rise to a constitutional claim, let alone a showing of a callous disregard for his constitutional rights. Likewise, Lindell's frustration that the government has not prosecuted the Colorado Secretary of State for conduct he believes violates federal law does not signify that the government's investigation into Lindell's actions amounts to a callous disregard for his constitutional rights. As in this case, most subjects of a search warrant cannot satisfy the extraordinarily high hurdle of a callous disregard of their constitutional rights, which is intentional and designed to prevent "a flood of disruptive civil litigation." Trump, 54 F.4th at 698 (quoting Deaver v. Seymour, 822 F.2d 66, 71 (D.C. Cir. 1987)).

Similarly, Lindell's claims that the search warrant is a general warrant, and he will suffer irreparable injury if the phone is not promptly returned to him are unavailing. The warrant described with specificity three federal offenses the government is investigating. It identified the particular records and information that law enforcement may seize from Lindell's cell phone. It further authorized the FBI to deliver a complete copy of the electronic data to attorneys for the government and their support staff for independent review. See Fed. R. Crim. P. 41(e)(2)(B) (enabling law enforcement to seize storage media or seize and copy electronically stored information for later review).

While the phone very likely also contains a plethora of information unrelated to the government's investigation, such as business-related correspondence and transactions; photographs; passwords; apps; potential attorney-client

-6-

communications; and private communications with friends, family, and business associates, this fact does not transform the warrant into a general warrant. See United States v. Fiorito, 640 F.3d 338, 347 (8th Cir. 2011) (determining a search warrant for entire files involving the defendant along with an illustrative list of items to be seized, although expansive, did not authorize an improper blanket search for documents for no particular purpose but instead had the purpose of "discovering evidence of an ongoing, well-defined equity-stripping scheme"). In addition, aware Lindell's phone would hold information unrelated to the investigation, the government indicated it implemented filter protocols to safeguard confidential, private, and privileged materials on Lindell's phone. If contrary information is developed and Lindell is charged, he will have an opportunity to raise his constitutional issues and any other legal challenges at that time. See Matter of Search of 4801 Fyler Ave., 879 F.2d 385, 389 (8th Cir. 1989) (noting the district court abused its discretion in exercising equitable jurisdiction because if criminal proceedings are instituted, the defendant will have an adequate remedy to challenge the search).

Although Lindell insists that his cell phone is essential for conducting his businesses, Lindell acknowledged in a sworn declaration that his phone had been backed up five days prior to its seizure. Even after the seizure, Lindell had access to, and continues to have access to, the vast majority of information contained on the cell phone seized by federal agents. While he has been deprived of possession of his phone, he has not been deprived access to the phone's contents, other than perhaps a limited slice of no more than five days' worth of information that he has neither detailed nor identified with any particularity as vital to his businesses. Under these circumstances, Lindell cannot show that the government's seizure of the data consistent with the terms in the search warrant has caused irreparable injury to warrant the exercise of equitable jurisdiction.

Lastly, the mere threat of potential future prosecution is insufficient to establish irreparable harm for exercising equitable jurisdiction. As we have noted:

> [I]f we were to allow the mere threat of future prosecution to constitute irreparable harm these procedures would not be extraordinary, but quite ordinary. Every potential defendant could point to the same harm, thereby invoking the equitable powers of the court. This has not been the practice of the past, and we see no reason to alter that course now.

Id.

The district court did not abuse its discretion in determining the facts and circumstances of this case do not warrant the exercise of equitable jurisdiction to afford Lindell the relief he requests with regard to the government's access or seizure of his cell phone data consistent with the search warrant's terms. See Trump 54 F.4th at 698 (emphasizing "again and again that equitable jurisdiction exists only in response to the most callous disregard of constitutional rights, and even then only if other factors make it clear that judicial oversight is absolutely necessary").

Nonetheless, absent sufficient justification, the government has no right to hold onto property that is not contraband indefinitely. See United States v. Premises Known as 608 Taylor Ave., Apartment 302, Pittsburgh, Pa., 584 F.2d 1297, 1302 (3d Cir. 1978) ("[T]he government may not by exercising its power to seize, effect a De facto forfeiture by retaining the property seized indefinitely."). Lindell asked the district court to order the government to return his cell phone and data, pointing out that the government has access to important information regarding his businesses as well as privileged attorney-client information. Although Lindell sought the return of his property just over a week after it was seized and the district court issued its order six weeks later, the government has maintained the same position throughout the proceedings and continues to do so today—that is, there are no procedural or time limits on the retention of property seized pursuant to a warrant, even that which is not contraband, if the government believes it has "an ongoing evidentiary need" for the property. At oral argument—nine months after Lindell asked for the return of his phone and its data—the government maintained that the district court did not abuse its discretion in denying relief, reiterating its belief that it can continue to retain Lindell's cell phone and all its data pursuant to "general principles" that merely

-8-

require the government to believe it has "an ongoing evidentiary need." The continued retention of the phone as well as the government's ability to access and retain all the phone's data are issues that fell within the purview of Lindell's motion for return of property and remain points of contention today.

In general, the constitution protects individuals from unlawful, excessive, and unreasonable interference by government agents. The reasonableness of holding onto seized property is not dependent on the government's belief it has "an ongoing evidentiary need" or the statute of limitations for the offense under investigation, as that might "in many cases impose an impermissible burden on a citizen whose property is potential evidence" and be "tantamount to a forfeiture without the procedures required by statute and by due process." Id. The United States has not argued, nor does the record suggest, that Lindell's cell phone is contraband. The government's continued retention of the phone and all its data raises constitutional issues distinct from the lawfulness of the search warrant or its execution.

At oral argument, when pressed, the only need for retaining Lindell's phone that the government was able to identify was for the purpose of authentication. But authentication can occur by several methods, and the government has not explained why Lindell's phone cannot be authenticated by any other means, such as by introducing photographs of the phone and/or testimony regarding the phone's serial number and identification. Cf. Black Hills Inst., 967 F.2d at 1240 (stating that when the government's interest in retaining the property is merely to keep it as evidence, the court should consider whether this purpose could be equally served by alternatives to holding the evidence itself).

Moreover, as acknowledged by the district court, Rule 41(e)(2)(B), of the Federal Rules of Criminal Procedure, provides for a two-step process to search electronic items, such as a cell phone, which explicitly permits the copying of electronically stored information. Once that information is copied, the critical inquiry is whether the government has an adequate justification for continuing to withhold the property. See id. at 1240-41 (noting the government may retain seized

Appellate Case: 22-3510   Page: 9   Date Filed: 09/22/2023 Entry ID: 5318814

goods "for a reasonable time while the investigation and prosecution proceed" but the district court must balance the government's interest in retaining the property against the owner's right to get it back); Mr. Lucky Messenger Serv., Inc. v. United States, 587 F.2d 15, 17 (7th Cir. 1978) (concluding that when no charges have been filed for 17 months after the property was seized and the government is unable to present evidence justifying such a delay, "constitutional violations emerge which would seem on equitable principles to mandate that the property be returned").

In this case, the interest in returning the seized property is even more compelling given the unique nature of the property. The Supreme Court has recognized that cell phones are different from other property both in "a quantitative and a qualitative sense." Riley v. California, 573 U.S. 373, 393 (2014). The seizure of cell phones implicates privacy concerns far beyond those of other items. Id. When a cell phone is seized by the government and all its data is searched and retained by the government, there is undoubtedly an overbroad capture of information. The retention of data unrelated to the government's investigation and which goes beyond the terms of the search warrant implicates an individual's right to be free from unreasonable searches and seizures. Lindell specifically raised this issue when he explained in his motion before the district court and again in his opening brief that his phone contains privileged attorney-client information as well as important information about his businesses and argued that the government's retention violates his constitutional rights.

As noted by the Riley Court, modern cell phones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." Id. at 385. Given the necessity of cell phones in everyday life and the related privacy concerns regarding the breadth of data that they contain, the government's continued retention of Lindell's cell phone and all its data (including that which is entirely unrelated to the government's investigation), without adequate justification, could amount to a callous disregard of Lindell's constitutional rights.

We are unable to determine from the record before us whether the government can reasonably justify its continued refusal to return Lindell's cell phone, which at this point was seized nearly a year ago, or the data on it which is entirely unrelated to the offenses the government is investigating. Because the record has not been developed on this issue, we remand for the district court to hold a prompt hearing and balance the government's interest in retaining Lindell's cell phone and all its data against Lindell's right to get the property back, noting that "[u]ntil criminal charges are brought, the property owner is to be considered an innocent bystander." Black Hills Inst., 967 F.2d at 1244.

## III. CONCLUSION

We affirm the district court's denial of Lindell's motion for a preliminary injunction. We reverse the district court's decision not to exercise equitable jurisdiction over Lindell's motion for return of property as it relates to the continued retention of the cell phone itself and all its data, and remand for proceedings consistent with this opinion.

COLLOTON, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's decision affirming the district court's order of November 3, 2022, which denied appellant Lindell's motion of September 30, 2022, seeking a preliminary injunction. The requested injunction would have required the government to return a cell phone that was seized from Lindell on September 13, 2022, and would have prohibited the government from using any information retrieved from the cell phone.

As the court explains, Lindell failed to show irreparable harm and callous disregard of his constitutional rights that might have justified the exercise of equitable jurisdiction. The phone was seized pursuant to a warrant that was issued based on a judicial determination of probable cause. The manner and method of executing the warrant did not give rise to a constitutional claim. The warrant was

-11-

not an impermissible general search warrant. The government "implemented filter protocols to safeguard confidential, private, and privileged materials on Lindell's phone." Lindell acknowledged that he backed up the data on his phone five days before the seizure, and he made no showing that he was deprived of any information that is vital to his business. Lindell made no claim that he was unable to replace the seized hardware or that he was left at the time of his motion without a fully functioning cell phone.

I dissent from the portion of the court's opinion that purports to "reverse" in part the decision of the district court. The stated reason for reversal is that the district court did not "balance" the interests of the parties to determine "whether the government can reasonably justify its continued refusal to return Lindell's cell phone, which at this point was seized nearly a year ago." This discussion concerns a ruling that was never made on a motion that was never filed. The only motion before the district court came seventeen days after the seizure and was properly denied shortly thereafter in November 2022. The majority exceeds the proper scope of appellate jurisdiction by purporting to rule on a different dispute concerning the retention of seized property in September 2023.

If Lindell now wishes to secure a return of his old phone as of September 2023, rather than "to, at a minimum, interfere with and, at most, enjoin a criminal investigation" in September 2022, *ante*, at 4, then he may file a straightforward motion for return of property based on the length of retention. The parties may then address the matter in proper briefing and evidentiary presentations, rather than spontaneously during an appellate oral argument regarding a different dispute. The district court may rule on the issue if it is presented, and either party may pursue an appeal based on a developed record.

There is also reason to doubt the substance of the majority's advisory opinion. The basis for the government's potential retention of property as of September 2023 was not briefed. Counsel addressed the topic briefly at oral argument in June 2023 when pressed about a matter outside the scope of the appeal. The majority

downplays the government's interest in authentication, but the record does not show whether Lindell is willing to stipulate that data retained by the government would be a true and accurate copy of the contents of his phone on September 13, 2022. The majority's reference to *Riley v. California*, 573 U.S. 373 (2014), is significantly out of context. *Riley* held that officers were required to obtain a warrant to search cell phone data. The government agents here obtained a warrant, and this court concludes that the manner of searching the data did not evidence a callous disregard of constitutional rights. Missing from the majority opinion is any suggestion of why Lindell might suffer irreparable harm as of September 2023 if filtered data are retained and secured in the same status throughout the ongoing investigation. Keeping an old cell phone whose owner backed up the data and replaced the hardware is markedly different than long-term retention of $65,000 in cash, *Mr. Lucky Messenger Serv., Inc. v. United States*, 587 F.2d 15, 17 (7th Cir. 1978), or sixty-five million-year-old dinosaur bones, *Black Hills Inst. of Geological Rsch. v. U.S. Dep't of Justice*, 967 F.2d 1237, 1240-41 (8th Cir. 1992).

The district court properly denied the motion that was before that court, and the majority does not suggest otherwise. I would simply affirm the ruling that is under appellate review.

_____